Janet SAAVEDRA wife of/and Robert Saavedra,
Plaintiffs–Appellants–Appellees,

v.

MURPHY OIL U.S.A., INC., Defendant–Third Party Plaintiff–Appellee–Appellant, Cross–Appellee.

J.T. CAMBRE, Defendant–Appellee,

v.

LOU–CON, INC., and National Union Fire Insurance Company of Pittsburgh, Pa., Third Party Defendants–Appellees–Cross–Appellants,

Travelers Insurance Company, Intervenor–Appellant.

No. 90–3254.

United States Court of Appeals, Fifth Circuit.

May 8, 1991.

---

Gregory J. Noto, Sidney D. Torres, III, Chalmette, La., for Saavedra.

Brian T. Butler, Baton Rouge, for Travelers Ins. Co.

John Francis Olinde, Peter A. Feringa, Jr., Kenneth J. Servay, Douglas L. Grundmeyer, Chaffe, McCall, Phillips & Toler & Sarpy, New Orleans, La., for Murphy Oil U.S.A., Inc., and J.T. Cambre.

A. Morgan Brian, Jr., New Orleans, La., for Lou–Con.

Before CLARK, Chief Judge,
WILLIAMS and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Robert Saavedra and his wife sued Murphy Oil U.S.A., Inc. (Murphy) for injuries he allegedly received while working at a Murphy oil refinery in Meraux, Louisiana. Saavedra's employer, Lou–Con, Inc. (Lou–Con), was doing contract work for Murphy at the time of the accident. The district court granted summary judgment for Murphy, finding that it had tort immunity from Saavedra's suit because it was his statutory employer. The district court also granted judgment for National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), dismissing Murphy's third-party claim for defense costs as an additional insured under Lou–Con's policy. We affirm on the statutory employer issue and reverse on the insurance coverage issue.

I.

On the day of the accident in September 1988, Saavedra began his work at the Murphy refinery by digging ditches, but switched to tying down loose objects in anticipation of Hurricane Gilbert. While performing that work, he allegedly slipped on algae that had formed around a leaking fire hydrant and seriously injured himself. In September 1989, Saavedra sued Murphy in Louisiana state court. In October 1989, Murphy removed the case to federal court. In its answer, Murphy asserted, among other defenses, that it had statutory employer immunity under Louisiana law. Murphy also filed a third-party demand against Lou–Con and National Union, seeking contractual indemnification and defense costs. Also in October 1989, the district court conducted a preliminary scheduling conference. At that time, the pretrial conference was set for April 10, 1990.[1] All pretrial motions were to be filed so they could be heard at least 14 days before the pretrial conference. All discovery was to be completed at least 21 days before the pretrial conference, or on March 20, 1990.

On March 20, 1990, Murphy moved for summary judgment, contending that it was Saavedra's statutory employer. An affidavit of Frank Michelle, Murphy's contract supervisor at its Meraux refinery, accompanied the motion. That same day, Saavedra noticed six depositions for May 17, 1990, to which it alleges that Murphy's counsel had agreed. On March 28, 1990, Saavedra moved for continuance on the hearing of Murphy's motion or to file an untimely deposition. The district court denied this motion the same day. On March 29, 1990, Saavedra moved to file a second supple-

---

1. By minute entry filed February 15, 1990, the pretrial conference was reset for April 30, 1990 "[d]ue to a conflict in the Judge's calendar." However, the original scheduling order provided that "continuation of the final pretrial conference shall not affect or change the remaining deadlines set herein."

mental and amended complaint and for reconsideration of his motion for continuance. On April 2, 1990, the district court cancelled the April 4, 1990 hearing on these motions and granted Murphy's motion for summary judgment. The district court held that Murphy was Saavedra's statutory employer and therefore its liability was limited to worker's compensation benefits. The district court further dismissed as moot Murphy's third-party demand against Lou–Con and National Union.

Murphy then moved to amend the judgment on the issue of its entitlement to contractual indemnification and defense costs from Lou–Con and National Union. Lou–Con's worker's compensation carrier, Travelers Insurance Company (Travelers), also moved to intervene to recover worker's compensation benefits it paid to Saavedra. In May 1990, the district court entered a First Amended Judgment. In this judgment, the district court reaffirmed its dismissal of Saavedra's suit and of Murphy's third-party claim for contractual indemnity against Lou–Con. It also granted Travelers' motion to intervene, but dismissed the intervention and denied Travelers' claim for penalties against Murphy for bad faith refusal to consent to the intervention. Finally, the district court held that Lou–Con was liable to Murphy for Murphy's costs in defending Saavedra's suit, but that National Union did not cover Murphy and therefore was not required to pay Murphy's defense costs. Several appeals and cross-appeals followed.

## II.

### A.

■ Saavedra first argues that the district court should have granted his request for a continuance on Murphy's motion for summary judgment. Saavedra argues that a continuance was necessary for him to secure evidence to oppose the motion for summary judgment. A district court "may" order such a continuance to conduct discovery. Fed.R.Civ.P. 56(f). The decision to grant a continuance under this rule rests in the sound discretion of the district court. *See Walters v. City of Ocean Springs*, 626 F.2d 1317, 1321 (5th Cir. Unit A 1980) (per curiam).

Saavedra contends that Murphy "ambushed" him by waiting until the last day of the discovery period to move for summary judgment. Saavedra further argues that he did not consider the statutory employer defense a serious concern until the motion for summary judgment was filed. Saavedra points out that Murphy had agreed to depositions of six of its employees after the discovery cutoff date, but declined to consent to a continuance of the hearing on the summary judgment motion so Saavedra could secure evidence needed for opposition. Saavedra argues that under these circumstances, the district court abused its discretion in refusing to grant a continuance to allow him to conduct limited discovery relative to the statutory employer issue.

Saavedra had ample opportunity to conduct discovery on the statutory employer issue. Murphy asserted the defense in its answer of October 10, 1989, and the discovery cutoff date was set for March 20, 1990. Moreover, the district court's scheduling order provided that "[t]he deadlines fixed herein may not be extended except upon good cause shown *and* by order of the Court; the Court will not recognize any agreement between counsel regarding such without a special order of the Court." (emphasis in original). Saavedra concedes that he should have sought an extension of the discovery cutoff date from the district court but did not do so. The district court did not abuse its discretion in denying Saavedra's request to continue the hearing on Murphy's motion for summary judgment.

### B.

■ Saavedra next argues that the district court erred in granting Murphy's motion for summary judgment. The district court found that Murphy was Saavedra's statutory employer based on the three-step analysis of *Berry v. Holston Well Service, Inc.,* 488 So.2d 934 (La.1986): (1) Was Saavedra's work non-specialized; (2) was

Saavedra's work part of Murphy's trade, business, or occupation; and (3) was Murphy engaged in Saavedra's work at the time of the accident? *Id.* at 938. Under *Berry*, if the answer to each of these questions is yes, Murphy is Saavedra's statutory employer. Saavedra admitted that his work at Murphy's was non-specialized. Moreover, question number 3 collapses into question number 2, and the primary issue becomes whether Saavedra's work was part of Murphy's trade, business, or occupation.[2]

Both sides agree that Saavedra was digging ditches at the refinery.[3] The parties disagree about the significance of this work. Saavedra argues that the reason he was digging ditches was to prepare for the placement of cement columns to support a pipe rack. He cites an excerpt from his deposition in which he says, "I was digging ditches in the pipe rack to put cement columns under the pipes." He contends that this work is an integral part of the construction process. Saavedra alleges that no evidence shows that Murphy was in the "trade, business, or occupation" of doing construction work on its premises. Saavedra cites cases which hold that generally construction work is not part of the trade, business, or occupation of an oil refinery for which such work is performed. *See Lewis v. Exxon Corp.*, 441 So.2d 192, 198–99 (La.1983) (on reh'g); *Reeves v. Louisiana & Ark. Ry.*, 282 So.2d 503, 507–08 (La.1973).

Murphy contends that Saavedra was digging ditches for general maintenance and such work was part of its "trade, business, or occupation." Murphy cites Michelle's affidavit, which states "digging under pipe racks is performed periodically by general maintenance workers (either by Murphy Oil or Lou–Con employees) so that the bottom of the pipes can be cleaned, painted or repaired." Michelle's affidavit further says that "Lou–Con general maintenance workers supplemented Murphy Oil's maintenance team." Although Saavedra argues that the "either/or" language in Michelle's affidavit is ambiguous, Murphy contends that a common-sense reading of the affidavit shows that *both* Murphy and Lou–Con employees performed ditch digging and that this was general maintenance work. Murphy also points to its contract with Lou–Con. Both parties agree that the contract was for Lou–Con to provide men and equipment for general labor around the Murphy plant. Finally, Murphy contends that Saavedra first raised the issue of construction work on appeal.

Even assuming that Saavedra did point out the excerpt in his deposition concerning cement columns to the district court, this one statement is insufficient to negate the inference that he was doing maintenance work as provided for in Lou–Con's contract and as outlined in Michelle's affidavit. The contract and affidavit are sufficient to establish that digging under pipe racks was maintenance work and such work was part of Murphy's trade, business, or occupation.[4] Although all inferences should be resolved in Saavedra's favor on summary judgment, the record, taken as a whole, does not reveal a genuine dispute over the material fact that Saavedra's maintenance work was part of Murphy's trade, business,

**2.** Two recent district court cases have held that *Berry* has been legislatively overruled by La. Rev.Stat.Ann. § 23:1061(A) (West Supp.1991). *See Sawyer v. Texaco Refining & Marketing, Inc.*, No. 89–2734, 1991 WL 28986 (E.D.La. Feb. 25, 1991); *Brock v. Chevron Chem. Co.*, 750 F.Supp. 779 (E.D.La.1990), *appeal docketed*, No. 90–3854 (5th Cir. Nov. 28, 1990). Moreover, these cases further hold that § 1061 is interpretive in nature and should be applied retroactively. They hold that under amended § 1061, the only consideration in determining statutory employer status is whether the work the injured party was doing was part of the defendant's "trade, business, or occupation." Because this is the very test we are using in the instant case,

the potential retroactivity of new § 1061 need not be addressed.

**3.** Neither side focuses on the fact that at the actual time of Saavedra's injury he had temporarily turned from his ditch-digging work to tying down objects in anticipation of an approaching hurricane.

**4.** In fact, Saavedra's statement that he was "digging ditches in the pipe rack to put cement columns under the pipes" is not facially contradictory to Michelle's affidavit. Putting cement columns under the pipes could be a form of maintenance.

or occupation. The district court correctly granted summary judgment in Murphy's favor.

### C.

■ Travelers, as Lou–Con's workers compensation carrier, sought to intervene in this suit to recover benefits paid to Saavedra. Murphy refused to consent to Travelers' intervention. Travelers asserts that Murphy's refusal was in bad faith, entitling Travelers to sanctions against Murphy. *See* E.D.La. Local R. 2.08E. Under that rule, the district court *may* impose sanctions for bad faith refusal to consent to an intervention. The district court did grant Travelers' motion to intervene "primarily for the purpose to permit it to appeal along with plaintiffs." However, the district court simultaneously dismissed Travelers' claim because its rights were wholly derivative of Saavedra's claim which had previously been dismissed.

Travelers argues that the district court erred in not awarding it sanctions for Murphy's refusal to consent to its intervention. Murphy argues that it had two valid reasons for its refusal to consent. First, as the district court noted, "a proper basis for denying leave to intervene may be a finding that the proposed intervention would fail to state a claim." *Cf. Emory v. Texas State Bd. of Medical Examiners*, 748 F.2d 1023, 1027 (5th Cir.1984) (a district court need not grant leave to amend a complaint if the amendment is futile or subject to dismissal); *Pan–Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980) (same), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). Because Saavedra's suit against Murphy was dismissed and Travelers' intervention was wholly derivative of Saavedra's claim, Travelers could not state a claim against Murphy.

Second, Murphy argues that it had a good faith belief that the Travelers' policy contained a waiver of subrogation in its favor. Lou–Con's contract with Murphy provided that Lou–Con's workers' compensation policy include such a waiver. At oral argument, counsel for Travelers conceded that if his client had waived subrogation it would not have had a right to intervene. Under these circumstances, the district court did not abuse its discretion in failing to sanction Murphy for opposing Travelers' motion to intervene.

### III.

### A.

■ Murphy argues that the district court erred in refusing to cast National Union with the cost of Murphy's defense to this suit. Lou–Con, who was cast with these costs, joins in Murphy's argument that the insurance company should be liable. The contract between Murphy and Lou–Con contains the following provisions:

### ARTICLE VIII—DEFENSE OF LAWSUITS

If MURPHY is made a defendant in a lawsuit involving or arising out of CONTRACTOR's [Lou–Con's] operations or performance under this GENERAL AGREEMENT, CONTRACTOR [Lou–Con] will reimburse MURPHY for all attorney's fees, other legal expenses, and any other expenses MURPHY may incur in defense of such action.

. . . .

### ARTICLE X—LIABILITY & INSURANCE

A. ... CONTRACTOR [Lou–Con] hereby agrees to indemnify and save harmless from any and all claims, demands, liabilities, suits or actions (including expenses and attorney's fees) for bodily injuries, including death resulting therefrom, to any persons, including employees of CONTRACTOR [Lou–Con] and its subcontractors, and loss of or damage to property, including property of CONTRACTOR [Lou–Con], arising out of or in connection with negligent acts of CONTRACTOR [Lou–Con] or its agents or employees in the performance of work under this GENERAL AGREEMENT.

B. Until this GENERAL AGREEMENT has been fully and completely performed, CONTRACTOR shall maintain in full force and effect with responsible carriers the following minimum insurance coverage:

. . . .

2. Comprehensive General Public Liability Insurance with a combined single limit of not less than $1,000,000. Such insurance will include Contractural [*sic*] Liability to specifically insure CONTRACTOR [Lou–Con] against liability assumed in Section (A) of this Article X.

. . . .

C. . . . MURPHY shall be designated as an Insured on all such policies.

National Union's policy with Lou–Con provides that "additional insureds are covered under this policy as required by *written contract*, but only with respect to operations performed by or for the named insured [Lou–Con]." (emphasis in original).

Murphy argues that the district court erred in dismissing its claims against National Union. Murphy contends that it is an additional insured under the National Union policy because its written contract with Lou–Con obligated Lou–Con to designate it as such an insured. Because National Union assumed the duty in its policy to defend its insureds against any suit alleging bodily injury, Murphy further argues that as an additional insured it was entitled to a defense from National Union on Saavedra's suit.

Conversely, National Union argues that the clause "as required by written contract" in its blanket endorsement limits its obligation to Murphy to those Lou–Con assumed in Article X of its written contract with Murphy. National Union contends that under that contract, Lou–Con's duty to secure insurance is separate from its duty to defend Murphy. It argues that under the contract Lou–Con has a duty to defend Murphy under Article VIII and a duty to secure insurance under Article X. National Union interprets this duty to secure insurance as limited to the liability contemplated under Article X(A) which indemnifies Murphy for Lou–Con's own negligence.

Because that clause does not provide in "clear and specific language," *see Amoco Prod. Co. v. Forest Oil Corp.*, 844 F.2d 251, 254 (5th Cir.1988), that Lou–Con must also indemnify Murphy for Murphy's negligence, National Union argues that the insurance provided by it to Murphy does not apply to Saavedra's suit which is based on Murphy's, and not Lou–Con's, negligence.

National Union reads limitations in its omnibus insuring provision that are not there. That provision accomplishes two objectives. First, it describes who is included as an additional insured: "insureds are covered under this policy as required by written contract." No one disputes that Murphy achieved this status by requiring in its written contract that Lou–Con name Murphy as an insured. Second, the policy places a single limitation on its obligation to give Murphy (and others) additional insured status. The insured status arises only "with respect to operations performed by or for the named insured." By including this clause, National Union avoids the claim that it insures all of Murphy's liability even that arising from operations unrelated to Lou–Con's work. Because the accident Saavedra sues upon is directly related to Lou–Con's work, this clause is satisfied, and the policy extends insured status to Murphy.

The plain policy language does not support National Union's argument that its coverage of Murphy is limited to the indemnity obligation Lou–Con assumed in its contract. The insuring clause at issue simply does not adopt the limiting language of the Lou–Con contract. *See Forest Oil Corp. v. Strata Energy, Inc.*, 929 F.2d 1039 (5th Cir.1991) (interpreting an essentially identical clause providing coverage "to those for whom the Named Insured has agreed in writing to provide insurance in connection with such operations solely done by the Named Insured"). Thus under the terms of the National Union policy, Murphy was an additional insured, entitled to both insurance coverage and a defense for Saavedra's suit. We therefore reverse the district court's judgment on this issue and remand for the district court to grant judgment in Murphy's favor, casting National Union for Murphy's defense costs.

**B.**

 Murphy argues that National Union should be penalized for its bad faith failure to furnish Murphy a defense. An insurer's wrongful refusal to defend its insured in a liability suit entitles the insured to penalties and attorney's fees. La. Rev.Stat.Ann. § 22:658(B)(1) (West Supp. 1991). This statute requires that the insurer's denial be arbitrary or capricious. Because of its penal nature, the statute is strictly construed and is not automatically applicable whenever an insurer is cast in judgment. The statute should not be invoked when the insurer had a "reasonable basis" for denying coverage or a defense. *See McGrew v. State Farm Mut. Auto. Ins. Co.*, 385 So.2d 1276, 1284 (La.Ct.App. 3d Cir.1980). Even though we disagree with the district court concerning National Union's coverage of Murphy, we conclude that National Union's denial was nevertheless not "arbitrary or capricious." Penalties are denied.

Accordingly, the district court's take-nothing judgment for Murphy on the main demand is affirmed, and its judgment for National Union on Murphy's third-party demand is reversed.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.