**ADMIRAL INSURANCE COMPANY,**
Appellant,

v.

**TRIDENT NGL, INC., Appellee.**

**No. 01–97–00468–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 25, 1999.

Rehearing Overruled May 7, 1999.

Deanna Dean Smith, Houston, for Appellant.

Ronald Martin Weber, Houston, for Appellee.

Panel consists of Justices MIRABAL, WILSON, and TAFT.

## OPINION

MARGARET GARNER MIRABAL, Justice.

This case involves the interpretation of a commercial general liability insurance policy. The appeal is from the grant of the additional insured's [1] motion for summary judgment, and the denial of the insurer's [2] cross-motion for summary judgment. The trial court entered a final judgment awarding the additional insured $1,000,000 in damages, prejudgment and post-judgment interest, and attorneys' fees. We modify the judgment, and as modified, affirm.

The uncontroverted summary judgment evidence shows the following: K–D Oilfield Services (KD) was in the business of providing crews and equipment to service oil and gas facilities owned by other companies. Trident and KD entered into a Master Service Agreement (MSA) in October 1992 for KD to service facilities owned by Trident. Pursuant to the MSA, KD was required to purchase commercial general liability insurance and to include Trident as an additional insured. KD purchased the necessary insurance from Admiral, who issued a policy carrying KD as the "named insured" and Tri-

---

[1]. The additional insured is appellee, Trident NGL, Inc. (Trident).

[2]. The insurer is appellant, Admiral Insurance Company (Admiral).

dent as an "additional insured." The policy limit was $1,000,000.

On March 23, 1993, Domingo Santos, a KD employee, was assigned by KD to assist Trident in performing preventive maintenance on a compressor at the Maggie Harris Compressor Station outside of Breckenridge, Texas. Santos was unloading Trident's tools from Trident's truck when the compressor exploded. Santos was seriously injured.[3] Neither Santos nor anyone employed by KD performed any act or failed to perform any act that caused the compressor to explode. Admiral's policy was in effect on March 23, 1993.

Santos filed suit against Trident for tort damages. Trident then made a claim for coverage, as an additional insured, against Admiral. On November 15, 1993, Admiral denied coverage. Trident paid an amount many times in excess of the limits of the policy to settle Santos's claims. The parties stipulated the amount paid was reasonable. Trident then sued Admiral for breach of contract in failing to cover Trident for liability resulting from Santos's claim. Admiral counterclaimed, seeking a declaratory judgment that Admiral had no contractual obligation to defend or indemnify Trident.

In its first point of error, Admiral asserts the trial court erred in granting Trident's motion for summary judgment and overruling Admiral's motion for summary judgment.

Admiral made three arguments in its motion for summary judgment as to why coverage was properly denied:

1. The liability arose out of Trident's operations, not KD's operations, so the additional insured endorsement does not act to cover the injury;

2. Coverage is precluded for bodily injury to KD's employees; and

3. KD did not provide contractual liability insurance to Trident.

---

**3.** The parties stipulated that:
The explosion of the compressor caused Mr. Santos's injuries; the compressor that exploded was the same compressor on which Mr. Santos was to assist in performing preventive maintenance.

Trident's response and cross-motion for summary judgment addressed each of these issues, specifically arguing that Trident's liability "arose out of KD's operations," and, therefore, the additional insured endorsement did act to cover the injury.

■ Summary judgment is proper only when the movant establishes there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Long v. State Farm Fire & Cas. Co.*, 828 S.W.2d 125, 126–27 (Tex.App.—Houston [1st Dist.] 1992, writ denied). When both parties move for summary judgment and one is overruled and the other granted, on appeal we determine all questions presented. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Knighton v. International Bus. Mach. Corp.*, 856 S.W.2d 206, 209 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

In the present case, the parties agree there are no questions of fact at issue, only matters of law. The resolution of the two summary judgment motions rests on the proper interpretation of the "additional insured endorsement" to the general liability insurance policy.

■ The construction of an insurance policy and the limiting language in an endorsement are questions of law for the court to determine. *See Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). An insurance policy is a contract. Therefore, we construe it by applying rules of interpretation and construction generally applicable to contracts. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). When construing a written contract, our primary focus is to ascertain the true intent of the parties as expressed in the written document. *Id.* A written contract that can be given a definite or certain legal meaning is

At the time of the explosion, Mr. Santos was unloading Trident's tools to be used to perform the preventive maintenance from Trident's truck.

not ambiguous. *Id.* If the policy contains no ambiguity, the words used in the policy are to be given their ordinary meaning. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984).

 If, however, the language of the policy is subject to two or more reasonable interpretations, the policy is ambiguous and the construction that would afford coverage to the insured must be adopted. *National Union*, 907 S.W.2d at 520; *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990). Whether a contract is ambiguous is a question of law for the court to determine. *National Union*, 907 S.W.2d at 520. A court should consider an insurance policy as a whole, giving effect to each part of the contract. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). No single phrase, sentence, or section of a policy should be isolated and considered apart from the other provisions of the policy. *Id.* at 134.

The commercial general liability insurance policy provides the following coverage for KD as "named insured:"

The company will pay on behalf of the insured those sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or B. property damage to which this insurance applies.

 The "additional insured endorsement" provides as follows:

In consideration of the premium charged, the persons or entities insured provision is amended to include as an insured the organizations designated below, *but only with respect to liability arising out of the named insured's [KD's] operations.*

Additional insured:

Trident NGL, Inc.

P.O. Box 9359

The Woodlands, Texas 77387

(Emphasis added.) "Operations" is defined as "oil or gas well servicing . . . to include

materials, parts or equipment furnished in connection therewith."

Admiral maintains that the term "arising out of the named insured's [KD] operations" was intended only to provide coverage if KD's performance was a cause of the explosion. In other words, absent an affirmative act by KD that caused or contributed to the explosion, the additional insured endorsement in the policy in this case did not provide coverage.

Trident argues that the term "arising out of the named insured's [KD's] operations" was meant to provide Trident coverage for any claim that had a logical cause-in-fact connection with KD's operations. Thus, because the accident occurred while KD was performing its operations, i.e., KD's employee was present for the purpose of maintaining and repairing Trident's facilities, the claim was within the meaning of the policy.

Trident relies on several cases from around the country construing almost identical "additional insured endorsement" language.[4] The majority view of these cases is that for liability to "arise out of operations" of a named insured it is not necessary for the named insured's acts to have "caused" the accident; rather, it is sufficient that the named insured's employee was injured while present at the scene in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional insured.

In *Merchants Ins. Co., Inc. v. U.S. Fidelity & Guar. Co.*, 143 F.3d 5 (1st Cir.1998), a subcontractor added the general contractor as an additional insured to the sub's liability insurance. *Id.* at 6. While on the job, the sub's employee was injured as a result of the general contractor's negligence. *Id.* Because the injured employee suffered his injuries "in the course of, and contemporaneously with" the sub's work for the general contractor, the injury "arose out of" the work of the sub for the general contractor, and, therefore, the general contractor was covered under the

---

4. On this issue, we have found only one Texas state court case (a "no writ" case), and one federal case that cites that "no writ" Texas case: *Granite Constr. Co., Inc. v. Bituminous Ins. Cos.*, 832 S.W.2d 427, 428–30 (Tex.App.—Amarillo 1992, no writ); *Northern Ins. Co. v. Austin Commercial, Inc.*, 908 F.Supp. 436, 437 (N.D.Tex. 1994). To the extent they are contrary to this opinion, we disagree with these two cases.

"additional insured endorsement" for the negligence claims against it. *Id.* at 10.

In *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251 (10th Cir.1993), a patron at a city festival was injured when he jumped over a retainage wall in his haste to find a portable toilet. The patron sued the city for failure to warn of a dangerous condition. The city tendered its defense to the festival company's insurer because the city was named as an additional insured under the festival company's general liability insurance policy. The additional insured endorsement included the city as an insured "only with respect to liability arising out of operations performed for (the city) by or on behalf of (the Festival Company)." *Id.* at 254. The appellate court held the endorsement did not limit coverage to situations where the Festival Company was negligent; rather, the endorsement provided coverage for the city even though the city stipulated that it, alone, was 100% negligent, because the injury "arose out of" the operation of the festival. *Id.* The *McIntosh* court went on to apply the axiom that ambiguities in insurance policies are construed liberally in favor of the insured, stating:

> At best, the phrase "but only with respect to liability arising out of (the Festival Company's) operations" is ambiguous as to whose negligence is excluded from coverage. Because this ambiguous language purports to limit coverage, we must construe it narrowly.

*McIntosh*, 992 F.2d at 254.

In *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104 (5th Cir.1991), a contractor's employee was injured while performing work under the contract at an oil company. *Id.* at 1106. When the oil company was sued for negligence, it sought coverage under the additional insured clause of the contractor's general liability policy, which provided the oil company was covered "with respect to operations performed by or for [contractor]." *Id.* at 1110. The appellate court held: "Because the accident [that the plaintiff] sues upon is directly related to [contractor's] work, this clause is satisfied, and the policy extends insured status to [oil company]." *Id.*

The foregoing cases reflect the rule followed by a majority of courts around the country. *See* Douglas R. Richmond, *The Additional Problems of Additional Insureds,* 33 TORT & INS. L.J. 945, 956–65 (1998), and the cases there discussed.

We hold that, because the accident in this case occurred to a KD employee while the employee was on the premises for the purpose of performing preventive maintenance on the compressor that exploded, the alleged liability for the employee's injuries "arose out of KD's operations," and, therefore, was covered by the "additional insured" provision. Further, we note that, giving Admiral every benefit of the doubt, the policy is at best ambiguous and the construction that affords coverage to Trident must be adopted. *National Union*, 907 S.W.2d at 520.

Admiral additionally argues that the "employee" exclusion in the policy excluded coverage for injuries to KD's employees. We disagree. The exclusion states:

> ▮ This insurance does not apply:
>
> (k) to bodily injury to any employee of the Insured arising out of and in the course of his employment by the Insured for which the Insured may be held liable as an employer or in any other capacity; or to any obligation of the Insured to indemnify or contribute with another because of damages arising out of the bodily injury .... and this exclusion applies to all claims and suits by any person or organization for care and loss of services, but this exclusion does not apply to liability assumed by the insured under an incidental contract.

▮ By its terms, the exclusion applies to the "insured," not the "named insured." When, as here, a policy has a "severability of interests" clause,[5] each insured against whom a claim is brought is treated as if it was the

---

5. The "severability of interest clause" provides: "Insured" means any person or organization qualifying as an Insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability.

only insured under the policy. *Commercial Standard Ins. Co. v. American Gen. Ins. Co.,* 455 S.W.2d 714, 721 (Tex.1970). Neither party disputed that Santos was an employee of KD. If Santos had sued KD for his injuries, KD would have been denied coverage under the exclusion. The exclusion did not apply to Trident, however, because Trident was not Santos's employer.

■ Admiral's final argument is that KD failed to purchase the contractual liability insurance that would have covered Santos's injuries. The policy excludes coverage for "liability assumed by the Insured under any contract or agreement except an incidental contract...." As noted above, each insured against whom a claim is brought is treated as if it was the only insured under the policy. *Commercial Standard Ins. Co.,* 455 S.W.2d at 721. Trident's liability to Santos arose in tort, and not out of liability assumed by Trident under any contract or agreement.

We overrule Admiral's first point of error.

■ In its second point of error, Admiral asserts the trial court erred in awarding Trident prejudgment interest that exceeded the express cap on the maximum amount of damages payable under the policy.

The Admiral policy provided:

[Admiral] will pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages ... but [Admiral] shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of [Admiral's] liability has been exhausted by payment of judgments or settlements.

"Damages" were defined as:

only those sums which are payable because of bodily injury (or personal injury if applicable) or property damage to which this insurance applies and includes all interest on any judgment which accrues before entry of that judgment

In its judgment, the trial court found that Trident was entitled to damages in the amount of $1,000,000 due to injuries sustained by KD's employee, prejudgment and post-judgment interest, attorneys' fees and court costs.

The award of prejudgment interest in a breach of contract action is authorized by statute. TEX.REV.CIV. STAT. ANN. art. 5069–1.03 & 5069–1.05 (Vernon Supp.1999). While the policy in this case limited to the sum of $1,000,000 the amount of "damages" Admiral was required to pay Mr. Santos, *the third party tort claimant,* nothing in the policy suggests that the definition of "damages" was intended to insulate Admiral from having to pay prejudgment interest to *its insured,* Trident, if Admiral breached its contract. Prejudgment interest may be awarded to the insured when the insured has also been awarded the full amount of the policy limit. *Potomac Ins. Co. v. Howard,* 813 S.W.2d 557, 557–58 (Tex.App.—Houston [14th Dist.] 1991, no writ); *see also Maryland Ins. Co. v. Head Indus. Coatings and Servs., Inc.,* 938 S.W.2d 27, 29 (Tex. 1996) (allowing insured to recover against insurer for breach of contract damages equal to the policy limits, defense costs, prejudgment and post-judgment interest, and attorneys' fees).

We conclude the trial court did not abuse its discretion in awarding prejudgment interest. We overrule Admiral's second point of error.

In its third point of error, Admiral asserts the trial court erred in increasing the rate of prejudgment interest to ten percent instead of the mandated, contractual rate of six percent because the policy provided for a "sum payable" under the facts of this case. Trident concedes that Admiral's point of error is correct and the judgment should be reformed based on a recent Texas Supreme Court decision, *Great Am. Ins. Co. v. North Austin Mun. Dist. No. 1,* 950 S.W.2d 371, 372 (Tex. 1997).

We sustain Admiral's third point of error.

We modify the trial court's judgment to award prejudgment interest at the rate of six percent per annum, and, as modified, affirm the judgment.

Justice TAFT dissenting.

TAFT, Justice, dissenting.

The crucial issue in point of error one is the scope of coverage of an "additional insured" provision. As can be seen from this case and the only other Texas case on point, the purpose of obtaining the coverage here is to protect the additional insured from acts of the named insured who has entered into a contract to provide a service to the additional insured. *See Granite Constr. Co., Inc. v. Bituminous Ins. Cos.*, 832 S.W.2d 427, 428 (Tex.App.—Amarillo 1992, no writ). The main company (Trident) wants protection from suits brought by persons injured by agents of a servicing company (K–D Oilfield Service) who are on the premises to provide service to the main company. The main company requires the servicing company to obtain the coverage as a condition of receiving the servicing contract.

The language of the additional insured endorsement is:

> In consideration of the premium charged, the persons or entities insured provision is amended *to include* as an insured the organizations designated below [main company], but only with respect to liability arising out of the named insured's [servicing company's] operations.

It is clear to me that the liability in this case arose from the operations of the main company. *See and compare State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 932–34 (Tex.1998) (supreme court focused on the actual activity creating liability in determining application of exclusion for injuries "arising out of or in connection with" an insured's business). Here, the operations of the servicing company that placed its agent in harm's way were not a cause of the harm. The servicing company had no liability for the compressor explosion in this case.

To extend coverage to acts of the main company that harmed the agent of the servicing company upsets the delicate balance between the cost of this insurance policy and the coverage it provides. The result the majority achieves gives the main company, the tortfeasor in this case, an alternative source of coverage for its own negligence, at the expense of the named insured, the servicing company. To uphold this result as an application of the rule requiring ambiguous policy provisions to be construed in favor of the insured is particularly inappropriate here because the servicing company paid for the policy.

I would, therefore, follow the only Texas authority on point. I see no need to seek guidance from foreign jurisdictions in the absence of any more persuasive rationale than that those foreign jurisdictions comprise the "majority view." Accordingly, I respectfully dissent from the majority opinion's disposition of point of error one.