**McCARTHY BROTHERS COMPANY and McCarthy Western Constructors, Inc., d/b/a/ and a/k/a McCarthy Corporation, McCarthy Construction, and McCarthy, Appellants,**

v.

**CONTINENTAL LLOYDS INSURANCE COMPANY; American Casualty Company of Reading, Pennsylvania; and Mike Wilson, Appellees.**

No. 03–98–00671–CV.

Court of Appeals of Texas, Austin.

Nov. 18, 1999.

Rehearing Overruled Jan. 6, 2000.

Tim Poteeet, Lea & Chamberlain, Austin, for appellant.

Paul J. Van Osselaer, Hughes & Luce, L.L.P., Austin, for Continental Lloyds Ins. Co. & American Casualty.

Robert A. Chaffin, The Chaffin Law Firm, Houston, for Mike Wilson.

Before Justices JONES, B.A. SMITH and YEAKEL.

LEE YEAKEL, Justice.

Appellants, McCarthy Brothers Company and McCarthy Western Constructors, Inc., doing business as and also known as McCarthy Corporation, McCarthy Construction, and McCarthy,[1] appeal the district court's grant of summary judgment in favor of appellees, Continental Lloyds Insurance Company ("CLIC"), American Casualty Company of Reading, Pennsylvania ("ACC"), and Mike Wilson.[2] McCarthy

---

1.  McCarthy Brothers Company and McCarthy Western Constructors, Inc. are affiliated corporations; we will use their own designation, "McCarthy," when we refer jointly to both entities.

2.  For convenience, we will refer to CLIC and ACC collectively as the "insurance companies."

complains on appeal that the district court erred in ruling that McCarthy was not insured under commercial general liability policies issued by the insurance companies to subcontractors working for McCarthy even though these policies named McCarthy, the general contractor, as an additional insured. McCarthy further claims that the district court erred by failing to award McCarthy attorney's fees. We will reverse the district court's judgment insofar as it relates to coverage and render judgment in favor of McCarthy. We will affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

McCarthy, a general contractor, hired Crouch/Fisk Electric Company and Crouch Electric Company[3] to provide electrical services for a Motorola construction project McCarthy was managing. Crouch/Fisk and Crouch Electric purchased separate commercial general liability insurance policies for this project (the "policies") from CLIC and ACC respectively. McCarthy was added to both policies by endorsement as an additional insured ("additional-insured endorsements").[4]

During construction, Mike Wilson, an electrical foreman for Crouch, was injured when he slipped and fell at the construction site. Wilson sued McCarthy for negligence arising out of its duty of care owed to him as a business invitee (the "Wilson suit"). Wilson alleged that the electricians on the construction site were required to traverse a fifty-five to sixty foot incline to retrieve electrical equipment "necessary for their work" and that at the time of the accident, he was descending the incline and "fell on the muddy, slippery surface." Wilson asserted that this incline was unreasonably dangerous and that McCarthy knew or should have known of its condition because Wilson, as well as supervisors from Crouch, had requested that McCarthy place stairs in that area.

Pursuant to the additional-insured endorsements, McCarthy demanded a defense by the insurance companies in the Wilson suit. The insurance companies, asserting that these provisions did not cover the liability arising out of the Wilson suit, denied McCarthy's request. McCarthy then brought this suit in district court seeking a declaratory judgment that the insurance companies had a duty to defend it in the Wilson suit and for attorney's fees, damages, and court costs. The insurance companies counterclaimed for declaratory relief that McCarthy is not an insured covered by the policies and for attorney's fees and court costs.

Both parties moved for summary judgment[5] on the ground that Wilson's pleadings, read in the light of the additional-insured endorsements, determined as a matter of law whether the insurance companies had a duty to defend McCarthy pursuant to the policies. The insurance companies assert that McCarthy is not covered under the endorsements because the allegations in the Wilson suit allege negligence only on the part of McCarthy and not on the part of Crouch, and thus the *liability* in this case did not arise out of Crouch's work for McCarthy. McCarthy, on the other hand, urges that it is covered by the policies. McCarthy reasons that because Wilson's injuries were sustained while working on the Motorola construction site for Crouch, which was

---

**3.** We will refer to the subcontractors collectively as "Crouch."

**4.** The CLIC additional-insured endorsement states: "WHO IS AN INSURED ... the person or organization shown in the Schedule [McCarthy], but only with respect to liability *arising out of* "your work" [Crouch's] for that insured [McCarthy] by or for you [Crouch]." (Emphasis added.)

The ACC endorsement provides in pertinent part: "The insurance provided to the additional insured is limited as follows: 1. That person or organization [McCarthy] is only an additional insured with respect to liability *arising out of:* ... b. 'Your work' for that additional insured [McCarthy] by or for you [Crouch]." (Emphasis added.)

**5.** McCarthy moved for partial summary judgment.

performing work on behalf of McCarthy, the underlying liability *arose from work or operations of Crouch by or for McCarthy.* The district court rendered a final summary judgment, granting the insurance companies' motion and denying McCarthy's.[6] McCarthy appeals the district-court judgment.

## DISCUSSION

■ The resolution of the summary-judgment motions rests on the proper interpretation of the additional-insured endorsements, a question of law. *See Admiral Ins. Co. v. Trident NGL, Inc.,* 988 S.W.2d 451, 453 (Tex.App.—Houston [1st Dist.] 1999, pet. filed) (citing *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex.1983)) (construction of insurance policy and limiting language in endorsement are questions of law for court). We review the district court's decision *de novo,* taking into account the summary-judgment evidence presented by both sides, to determine the questions presented and render judgment such as the district court should have rendered. *See Grocers Supply Co. v. Sharp,* 978 S.W.2d 638, 642 (Tex.App.—Austin 1998, pet. denied) (citing *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex. 1994)) (courts review summary judgment *de novo* where propriety of summary judgment is question of law); *Commissioners Court v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997) (citing *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988)) (setting forth standard of review when trial court grants one motion for summary judgment and denies opposing motion).

■ To determine an insurer's duty to defend, Texas courts follow the "eight corners" rule. *See National Union Fire Ins. Co. v. Merchants Fast Motor Lines,* 939 S.W.2d 139, 141 (Tex.1997); *Texas Property & Cas. Ins. Guar. Ass'n v. Southwest Aggregates, Inc.,* 982 S.W.2d 600, 604 (Tex. App.—Austin 1998, no pet.) (citing *American Alliance Ins. Co. v. Frito–Lay, Inc.,*

788 S.W.2d 152, 153–54 (Tex.App.—Dallas 1990, writ dism'd)). Pursuant to the rule, we consider only the allegations in the underlying complaint and the terms of the insurance policy to determine whether a duty to defend exists. *See Merchants Fast Motor Lines,* 939 S.W.2d at 141; *Southwest Aggregates,* 982 S.W.2d at 604. "The duty to defend is not affected by the facts of the case ascertained before, during, or after the suit." *Cullen v. Commonwealth Lloyd's Ins. Co.,* 852 S.W.2d 252, 255 (Tex.App.—Dallas 1993, writ denied). Nor do we consider the reliability of the allegations in the underlying pleading. *See id.* We instead give the allegations in the petition a liberal interpretation, resolving any doubt in favor of the insured. *See Texas Med. Liab. Trust v. Zurich,* 945 S.W.2d 839, 842 (Tex.App.—Austin 1997, writ denied) (citing *Merchants Fast Motor Lines,* 939 S.W.2d at 141). If the underlying petition does not allege facts within the scope of coverage, the insurer has no duty to defend. *See id.* Therefore, to determine whether the insurance companies have a duty to defend McCarthy, we consider only the allegations in Wilson's petition and the additional-insured endorsements in the policies.

Insurance policies are contracts, and their construction is governed by the same rules of construction applicable to all contracts. *See Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 740–41 (Tex.1998); *National Union Fire Ins. Co. v. CBI Indus.,* 907 S.W.2d 517, 520 (Tex.1995). In construing a written contract, the primary goal of the court "is to give effect to the *written expression of the parties' intent." Balandran,* 972 S.W.2d at 741 (quoting *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995)); *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994) (emphasis added). The court should "ascertain the intent of the parties *as expressed in the instrument." National Union,* 907 S.W.2d at 520 (citing *Forbau,* 876 S.W.2d at 133) (emphasis added).

---

**6.** The court also denied the relief sought by McCarthy, ordered McCarthy to reimburse the appellee's taxable court costs, and or-

dered all parties to bear their own attorney's fees.

■ A written contract that can be given a definite or certain legal meaning is not ambiguous. *See National Union,* 907 S.W.2d at 520; *Coker,* 650 S.W.2d at 393. If a contract is not ambiguous, the words used in the contract are to be given their ordinary meaning. *See Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex. 1984); *see also Security Mut. Cas. Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex.1979) (terms of insurance contract given their "ordinary and generally accepted meaning"). However, if "the language of a policy or contract is subject to two or more reasonable interpretations, it is ambiguous," and the construction that would afford coverage to the insured must be adopted. *National Union,* 907 S.W.2d at 520; *see also Balandran,* 972 S.W.2d at 741.

### Construction of the Additional–Insured Endorsements

■ The parties join issue over the meaning of the term "arising out of" as used in defining McCarthy's coverage as an additional insured. In its first two issues, McCarthy contends that the contract can be given a certain and definite meaning affording coverage, or at least is ambiguous and should therefore be construed in its favor. We agree.

The supreme court has recently given a broad construction to the phrase "arising out of" in a case involving the construction of an automobile policy. *See Mid–Century Ins. Co. v. Lindsey,* 997 S.W.2d 153, 156 (Tex.1999). In *Lindsey,* while attempting to get into his parents' truck through the sliding rear window, a boy accidentally touched a loaded shotgun on a gun rack mounted over the window and shot a man sitting in an adjacent parked car. *See id.* at 154. The relevant insurance policy provided coverage for injuries *arising out of* the use of a motor vehicle. *See id.* at 155. The court held: "For liability to 'arise out of' the use of a motor vehicle, a causal connection or relation must exist between

the accident or injury and the use of the motor vehicle." *Id.* at 156. While the direct cause of the injury stemmed from the boy's conduct in touching the gun, the court concluded that the man's injury "arose out of" the use of the truck because the injury-producing act and its purpose were an integral part of the use of the vehicle. *See id.* at 158–59. The court noted that the vehicle must be more than the "locational setting" for the injury. *See id.* at 156.

The First Court of Appeals recently considered "arising out of" language in the context of an additional-insured provision. *See Admiral,* 988 S.W.2d at 455. In *Admiral,* a company hired to service an oil and gas facility named the facility's owner as an additional insured for liability arising out of the service company's operations. *See id.* at 454. While one of the service company's employees was unloading tools, a compressor on the property exploded. The employee, injured as a result of the explosion, sued the facility's owner, and the owner sought a declaration that he was covered as an additional insured under the policy. *See id.* The court of appeals followed what it considered the majority view from federal courts construing similar endorsements:

> [F]or liability to 'arise out of operations' of a named insured it is not necessary for the named insured's acts to have 'caused' the accident; rather it is sufficient that the named insured's employee was injured while present at the scene in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional insured.

*Id.* at 454.

This construction is in harmony with interpretations given to "arising out of" by courts in various jurisdictions. *See, e.g., Merchants Ins. Co. v. United States Fidelity & Guar. Co.,* 143 F.3d 5, 9 (1st Cir. 1998).[7] *Merchants* involved a fact situation comparable to the current case. In

---

7. *See also McIntosh v. Scottsdale Ins. Co.,* 992 F.2d 251, 255 (10th Cir.1993) ("arising out

of" clearly relates to causation but its terms are broad and vague; it "imparts a more

*Merchants*, a subcontractor's employee was injured as a result of the actions of an employee of the general contractor. *See id.* at 7. The insurer argued that "arising out of" imports proximate cause; therefore, the subcontractor's work was not the proximate cause of the injury and no coverage existed for the general as an additional insured. *See id.* at 9. The court disagreed, stating that "arising out of" is broader than the concept of proximate causation in tort law and denotes a nexus between proximate and actual causation. *See id.* The *Merchants* court noted that two companies did not merely happen to be working in the same area where the subcontractor's employee was injured by the general contractor's actions; rather the injury was a consequence of the work that the subcontractor was performing. *See id.* at 9–10.[8]

Wilson alleges in the underlying suit that he was working on the premises of Motorola for Crouch as an electrical foreman. To retrieve "tools and supplies necessary for their work," the electricians on the site had to traverse an incline of approximately fifty-five to sixty feet. As he was walking down this incline to go to the equipment trailer, Wilson "fell on the muddy, slippery surface." These allegations show that walking down the incline to get tools to perform its job was an integral part of Crouch's work for McCarthy. Thus, the accident occurred while Wilson was on the construction site for the purpose of carrying out Crouch's contract with McCarthy. There was more than a mere locational relationship between the injury and Wilson's presence on the site. Wilson's injury occurred while he was carrying out a necessary part of his job for Crouch. Therefore, there is a causal connection between Wilson's injury and Crouch's performance of its work for McCarthy and the liability "arose out of" Crouch's work for McCarthy.

■ The insurance companies offer a competing interpretation for the phrase "arising out of" that they claim is equally reasonable and thus creates an ambiguity. Their interpretation would limit the interpretation of "arising out of" to mean coming *directly* from; i.e., for liability to arise out of Crouch's work for McCarthy, the liability must stem *directly* from Crouch's negligence and cannot extend to negligence caused solely by McCarthy. Post-*Lindsey*, however, such a restrictive interpretation no longer appears reasonable in Texas and cannot be used to create ambiguity.[9] However, were we to consider the

liberal concept than proximate cause"); *BASF Wyandotte Corp. v. Transport Ins. Co.*, 523 F.Supp. 515, 517 (D.C.Mich.1981) ("arising out of" does not mean proximate cause in strict legal sense); *Farmers Ins. Co. v. Till*, 170 Ariz. 429, 825 P.2d 954, 955 (App.1992) ("arising out of" imports concept of causation or causal link, but causal connection does not equate to proximate cause); *State Farm Mut. Auto. Ins. Co. v. LaSage*, 262 Ark. 631, 559 S.W.2d 702, 703 (1978) ("arising out of" cannot be construed to mean proximately caused by); *Kabanuk Diversified Invs., Inc. v. Credit Gen. Ins. Co.*, 553 N.W.2d 65, 72 (Minn.App. 1996) ("arising out of" requires only causal connection not proximate cause).

**8.** For examples of other cases finding coverage for the additional insured's own negligence, see *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1110 (5th Cir.1991) (additional insured "with respect to operations performed by or for the named insured" covered because claim directly related to named insured's work); *Philadelphia Elec. Co. v. Na-*

*tionwide Mut. Ins. Co.*, 721 F.Supp. 740, 742 (E.D.Pa.1989) (clause adding additional insureds "for any work performed by the [named insured] on their behalf" covered additional insureds for their own negligence related to the work of the named insured); *Casualty Ins. Co. v. Northbrook Property & Cas. Ins. Co.*, 150 Ill.App.3d 472, 103 Ill.Dec. 495, 501 N.E.2d 812, 815 (1986) (phrase "arising out of operations performed for the additional insured by the name insured" covered the additional insured for its own negligence).

**9.** In *Granite Construction Co. v. Bituminous Insurance Co.*, 832 S.W.2d 427, 430 (Tex. App.—Amarillo 1992, no writ) the court interpreted a similar policy as unambiguously excluding coverage for the additional insured's own negligence. In *Granite*, Granite Construction contracted with the Brown Company to haul asphalt from its construction site. *See id.* at 428. One of Brown's employees was injured while Granite employees were loading Brown's truck. *See id.* In upholding the summary judgment that Bituminous,

phrase "arising out of" ambiguous, we would apply the familiar rules that construe the policy against the insurer and reach the same result.

Accordingly, we reverse the district court's judgment and render judgment that McCarthy was covered by the additional-insured endorsements provided in the policies and was entitled to a defense under the policies.

### Attorney's Fees

■ McCarthy asserts in its final issue that the district court abused his discretion by denying its request for attorney's fees. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (West 1997) (trial court may award "necessary attorney's fees as are equitable and just"). "A prevailing party in a declaratory judgment action is not entitled to attorney's fees simply as a matter of law; entitlement depends upon what is equitable and just and the trial judge's power is in that respect discretionary." *Unified Loans, Inc. v. Pettijohn,* 955 S.W.2d 649, 654 (Tex.App.—Austin 1997, no pet.) (citing *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990)). We will not reverse a trial court's decision regarding whether to award attorney's fees without a showing of an abuse of that discretion. *See Davis v. City of Robinson,* 919 S.W.2d 849, 852 (Tex.App.—Austin 1996, writ denied) (citing *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 881 (Tex. 1990)). "Reversal for an abuse of discretion is justified only when the trial court's decision was arbitrary and unreasonable." *Id.* (citing *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991); *Simon v. York Crane & Rigging Co.,* 739 S.W.2d 793, 795 (Tex.1987)).

McCarthy initiated these proceedings seeking a declaration that the insurance companies were obligated to provide it a defense in the Wilson suit. The insurance companies responded and sought a declaration that they were not so obliged. Both parties sought attorney's fees. Although the district court ruled in favor of the insurance companies, he specifically denied them attorney's fees. The district court's judgment states "that the parties shall each bear their own attorney['s] fees." The record does not reflect the reason for the district court's ruling. The district court may have felt that both McCarthy and the insurance companies had legitimate rights to pursue and both should thus bear their own attorney's fees. We conclude that the district court did not act arbitrarily and unreasonably in ruling that each party should be responsible for its own attorney's fees.

We therefore overrule McCarthy's third issue.

### CONCLUSION

We hold that McCarthy is covered by the additional-insured endorsements in the policies issued by the insurance companies and is entitled to a defense from them in Wilson's suit against McCarthy. We therefore reverse the district-court judgment in part and render judgment that McCarthy is covered under the policies in this case. In all other respects, we affirm the judgment of the district court.

---

Brown's insurer, had no duty to defend Granite as an additional insured, the court of appeals looked outside the "eight corners" of the policy and pleadings. It reviewed a contract that defined the scope of Granite's operations, concluded that loading was solely Granite's responsibility, then concluded there was no duty to defend. *See id.* at 429–30. We decline to follow a duty-to-defend analysis that violates the "eight corners" rule. Further, *Granite* was decided before *Lindsey's* analysis of the meaning of "arising out of."