Revised March 15, 2000

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 98-40831**

_____

**MID-CONTINENT CASUALTY COMPANY,**

> **Plaintiff-Counter Defendant-Appellant,**

> **versus**

**CHEVRON PIPE LINE COMPANY, ET AL.,**

> **Defendants,**

> **CHEVRON PIPE LINE COMPANY,**

> **Defendant-Counter Claimant-Appellee.**

_____

**Appeal from the United States District Court
for the Eastern District of Texas**

_____

**February 29, 2000**

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

At issue in this Texas diversity action is whether an injury to an employee of Power Machinery, Inc. (PMI), the named insured for Mid-Continent Casualty Company, "arose out of" PMI's independent contractor work for Chevron Pipe Line Company (CPL), Mid-Continent's additional insured, and is, therefore, covered under PMI's liability policy; and whether the attorney's fees and costs awarded CPL are reasonable, their having been set in the light of a settlement agreement and following a subsequent bench

trial on the issue.  Regarding coverage, we **AFFIRM**; for fees and costs, we **REVERSE** and **REMAND**.

I.

Earl Fant, a PMI employee working on CPL's premises pursuant to a labor services contract between CPL and PMI, was injured on 26 July 1994 while removing a valve in a vessel storage area.  As his employer, PMI was immune, under the Texas Workers' Compensation Act, from suit by Fant.  In August 1995, Fant and his wife sued CPL in federal court, claiming that its negligence caused his injury (*Fant* action).

The CPL-PMI services contract required PMI to:  (1) provide laborers to perform CPL's work; (2) indemnify and hold CPL harmless from claims for injury or death resulting from PMI's performance (except those caused by CPL's wilful or sole fault); (3) insure PMI's contractual indemnity obligations; and (4) name CPL (which PMI did) as an additional insured under PMI's policy with Mid-Continent.

Pursuant to the additional insured endorsement, Mid-Continent provided a defense for CPL for the *Fant* action.  By bench trial, the district court in late 1996 ruled:  (1) when injured, Fant was an independent contractor, with the PMI foreman controlling the manner and details of Fant's work; and (2) the design of the valve configuration in the area where Fant was injured was faulty, because it required the PMI crew to manhandle the valve in a

- 2 -

cramped area. The court rejected CPL's "borrowed servant" defense; concluded that its negligence was the proximate cause of Fant's injury; and awarded $435,000 to the Fants. *Fant v. Chevron USA, Inc.*, No. 95-CV-899 (E.D. Tex. 19 Nov. 1996).

Understanding the court to hold that CPL's liability rested solely on the negligent design of its facility, and interpreting the endorsement as covering liability arising *only from PMI's negligence*, Mid-Continent refused either to further defend or to indemnify CPL. Accordingly, CPL substituted counsel for the appeal in the *Fant* action.

Concomitantly, in the light of its coverage-refusal, Mid-Continent filed this action in December 1996 against Chevron and the Fants. It sought a declaratory judgment, based on a Texas intermediate appellate decision which foreclosed coverage for the additional insured under a similar endorsement: *Granite Constr. Co. v. Bituminous Ins. Cos.*, 832 S.W.2d 427 (Tex. App. 1992, no writ).

CPL and the Fants counterclaimed, *inter alia*, for bad faith and violation of Article 21.21 of the Texas Insurance Code (prohibiting unfair or deceptive trade practices in the insurance business); and sought a declaratory judgment on coverage. In addition, CPL filed a third-party claim against PMI, based on its services contract.

Pursuant to the Fants' motion, this action was transferred from the Southern District of Texas, in Houston, to the Eastern District of Texas, in Beaumont. There, it was assigned to the district judge who had presided over the underlying **Fant** action.

Among the motions regarding the parties' claims, Mid-Continent and CPL moved for summary judgment on coverage. This was granted CPL in October 1997, the district court holding that the endorsement unambiguously covered the judgment in the **Fant** action. Noting that the endorsement does *not* expressly limit coverage only for when PMI is at fault, the court held that the "arising out of" clause in the policy "means '*originate from*' the named insured's, PMI, work for the additional insured, CPL". (Emphasis added.) The court held, in the alternative, that CPL was also entitled to coverage on the bases of (1) Mid-Continent's waiver of its defenses, due to its failure to issue an effective reservation of rights; and (2) CPL's status as a third-party beneficiary under the policy's contractual indemnity provision. **Mid-Continent Cas. Co. v. Chevron Pipe Line Co.**, No. 97-CV-00095, slip op. at 27 (E.D. Tex. 10 Oct. 1997).

Following the partial summary judgment, CPL's third-party claim against PMI was dismissed. And, with the appeal in the **Fant** action pending, settlement was reached between CPL, Mid-Continent, and the Fants. In that regard, and for the action at hand, CPL and Mid-Continent settled all issues *except* coverage and attorney's

- 4 -

fees and costs; the latter issue was reserved for a bench trial. Following same, approximately $560,000 was awarded CPL in mid-1998. *Chevron Pipe Line Co. v. Mid-Continent Cas. Co.*, No. 97-CV-00095 (E.D. Tex. 2 June 1998).

## II.

Mid-Continent contests several rulings concerning coverage. In the alternative, although it does *not* challenge CPL being entitled to fees and costs, it does challenge the amount awarded.

## A.

Coverage was decided by summary judgment. The application of Texas law in interpreting the "additional insured" endorsement and the coverage holding are reviewed *de novo*. *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1260 (5th Cir. 1997); *see Liberty Mutual Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996) (on summary judgment, questions of law, including interpretation of agreements, are reviewed *de novo*).

The endorsement states: "WHO IS AN INSURED ... is amended to include [CPL], *but only with respect to liability arising out of 'your [PMI's] work' for [CPL] by or for you [PMI]*". (Emphasis added.) "Your [PMI's] work" is defined in the policy as "[w]ork or operations performed by you [PMI] or on your behalf; and [m]aterials, parts or equipment furnished in connection with such work or operations".

- 5 -

The dispute turns on interpreting "arising out of". Mid-Continent would limit coverage to CPL's *vicarious* liability for PMI's negligence, and contends, therefore, that the phrase should be narrowly interpreted to have a meaning akin to "caused by". CPL counters that *its negligence*, as well as PMI's, is covered; and that the injury or accident need only "originate from" or be "related to" the named insured's (PMI's) work for the additional insured (CPL). CPL urges that, if the endorsement is ambiguous, then, under Texas law, we must apply the construction favoring it, the insured. *See* **National Union Fire Ins. Co. v. Kasler Corp.,** 906 F.2d 196, 198 (5th Cir. 1990).

When summary judgment was rendered, only one reported Texas appellate decision, noted *supra*, addressed the scope of coverage under a similar endorsement: **Granite**, 832 S.W.2d 427. Mid-Continent principally relies on it, while CPL seeks to distinguish it. The Texas Supreme Court has *not* ruled on this issue.

As here, **Granite** concerned a services contract by which an independent contractor agreed to include the other party as an additional insured. Pursuant to its contract to remove asphalt from Granite's construction site, Joe Brown Company so named Granite under its policy with Bituminous, "but only with respect to liability arising out of operations performed for such insured [Granite] by or on behalf of the named insured [Brown]". **Id.** at 428. A Brown employee, injured when his truck overturned, sued

- 6 -

Granite, claiming that its *negligence in loading his truck* caused his injury. *Id.*

Granite contended that coverage was available under the endorsement, because the claim arose out of operations performed under the services contract; Bituminous, that the endorsement covered liability only for activities performed by its named insured, Brown. *Id.* at 429. After examining *both* the services contract and the endorsement, the **Granite** court ruled against coverage. *Id.* at 430. It acknowledged that the parties presented "contradictory interpretations" of the endorsement; and that, if both were reasonable, Granite's had to be adopted. *Id.* It reasoned, however, that, in this instance, limiting coverage would best effect the parties' intentions because, *under the services contract*, the *loading operation* was delineated as Granite's *sole* responsibility. *Id*. The court noted that the allegations in the employee's action made it "obvious" that the claim "arose out of the loading operations performed by Granite ...", during which Brown had no role. *Id.*

**Northern Ins. Co. of New York v. Austin Commercial, Inc.**, 908 F. Supp. 436, 437 (N.D. Tex. 1994), applying Texas law, interpreted **Granite** to require a claim of *direct negligence against the named insured* in order to trigger coverage. Noting that the named insured was *not* a defendant, and that there were no allegations of negligence against it, the court concluded that, under **Granite**,

- 7 -

there was *no* coverage for the additional insured. ***Id.*** Mid-Continent urges that this ***Austin***-holding is the correct interpretation of Texas law; CPL, that ***Granite*** was misinterpreted.

The parties' clearly demarcated legal positions regarding the policy language are only a piece of this puzzle; in district court, the findings of fact in the underlying ***Fant*** action played a central role. At the summary judgment hearing for this action, Mid-Continent asserted that liability in the ***Fant*** action rested solely on CPL's negligent design of its facility; and that, because PMI did *not* participate in such design, its work was *not* causally connected to the event which prompted liability. Mid-Continent noted that the Fants did *not* claim that PMI was negligent, and asserted that the district court found *no* negligence by PMI.

CPL contended that the findings of fact in the ***Fant*** action were *not* dispositive, because PMI was *not* a party and its fault was never before the court; and that the *absence* of findings regarding PMI's fault is *not* the equivalent of finding *no* fault. In this regard, it notes that Mid-Continent's (and the ***Austin*** court's) reliance on allegations in the plaintiff's pleadings ignores the worker's compensation bar against suing one's employer.

In granting CPL summary judgment in this action, the district court stated that Mid-Continent misunderstood its findings in the ***Fant*** action. Acknowledging that it had found CPL's facility design faulty, it explained that CPL's liability was also based, in part,

on PMI's failure to utilize equipment available to perform the job safely (described by the court as "operations negligence"), noting that the PMI foreman was in control of Fant's work. In addition, it stated that the **Fant** action was distinguishable from **Granite**, because Fant's injury "was not attributable to events for which [CPL] was *solely* responsible". (Emphasis added.)

Subsequent to the summary judgment, and prior to oral argument here, another Texas intermediate appellate court, interpreting a similar endorsement under similar facts, reached a result favoring coverage for the additional insured; in so doing, it disagreed with **Granite** and **Austin** "[t]o the extent they [were] contrary to [its] opinion". **Admiral Ins. Co. v. Trident NGL, Inc.**, 988 S.W.2d 451, 454 n.4 (Tex. App. 1999, writ denied).

In **Admiral**, K-D Oilfield Services (KD), pursuant to its services agreement with Trident, included Trident as an additional insured, "'*but only with respect to liability arising out of the named insured's [KD's] operations'*". **Id.** at 452, 454 (emphasis in original). A KD employee, preparing to perform maintenance on one of Trident's compressors, was injured when it exploded. **Id.** at 453.

As does Mid-Continent here, Admiral Insurance contended that the endorsement provided coverage *only* if the performance by the named insured, KD, "caused or contributed to" the injury-causing event, and asserted that, instead, "liability [for the injury]

- 9 -

arose [solely] out of Trident's operations". *Id.* at 453. Relying on similar cases from other jurisdictions, Trident responded that coverage was intended as long as there was a nexus between the claim and KD's operations. *Id*. at 454. It maintained that this nexus was present, because KD's employee was on site to maintain Trident's equipment. *Id.*

Noting that the majority of courts addressing similar endorsements have found coverage for the additional insured where "the named insured's employee was injured ... in connection with performing the named insured's business, even if the cause of the injury was the negligence of the additional insured", *id.* at 454, the *Admiral* court held that,

> because the accident ... occurred to a KD employee while ... on the premises for the purpose of performing preventative maintenance on the compressor that exploded, the alleged liability for the employee's injuries "arose out of KD's operations," and, therefore, was covered by the "additional insured" provision. Further, we note that, giving Admiral every benefit of the doubt, the policy is at best ambiguous and the construction that affords coverage to Trident must be adopted.

*Id.* at 455 (citing *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)).

Shortly before oral argument here, and based on the claimed conflicting holdings in *Granite* and *Admiral*, Mid-Continent moved to certify to the Texas Supreme Court the question of interpretation of the endorsement.

Subsequent to oral argument, another Texas appellate court has agreed with *Admiral*'s interpretation of the endorsement: *McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*, 7 S.W.3d 725 (Tex. App. 1999, reh'g overruled). The court based its decision on the Texas Supreme Court's recent "broad construction [of] the phrase 'arising out of' in ... an automobile policy". *Id.* at 729 (citing *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999)). It expressly "decline[d] to follow" *Granite*, noting that, by considering the services contract in its duty-to-defend analysis, *Granite* "violate[d] the 'eight corners' rule" requiring the court to look *only* to the allegations in the complaint and the terms of the policy. *Id.* at 730 n.9. *See* *National Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997).

As noted, the Texas Supreme Court has *not* ruled on this issue. Faced with these Texas intermediate appellate decisions, we are *Erie*-bound to determine what the Texas Supreme Court would hold. *See* *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). "'[A] decision by an intermediate appellate court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced ... that the [Texas Supreme Court] would decide otherwise.'" *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (quoting *Texas Dep't of*

*Hous. & Community Dev. v. Verex Assurance, Inc.*, 68 F.3d 922, 928 (5th Cir. 1995) (citation omitted)).

The Mid-Continent endorsement and those in *Granite* and *Admiral* are *not* identical. Mid-Continent uses "liability arising out of 'your (PMI's) work'", defined by the policy as the named insured's [PMI's] work *or* operations, while the *Granite* and *Admiral* endorsements, respectively, used "liability arising out of *operations* performed ... by or on behalf of the named insured", *Granite*, 832 S.W.2d at 428, and "liability arising out of the named insured's *operations*". *Admiral*, 988 S.W.2d at 454 (emphasis added). On the other hand, the pertinent language in the two additional insured endorsements at issue in *McCarthy* is identical to that in Mid-Continent's. *See McCarthy*, 7 S.W.3d at 727 n.4.

Mid-Continent urges that the proper focus of the inquiry is the language "liability arising out of" and, concomitantly, the facts which relate to imposition of liability. It continues to claim that liability was imposed on CPL because of faulty facility design, which it contends was *solely* CPL's responsibility; and that, therefore, Fant's injury did *not* "arise out of" PMI's conduct.

CPL contends that coverage in this action would be consistent with *Granite* and *Admiral* (post-argument, CPL notified us of *McCarthy*, which had *not* then been released for publication), because *Granite*'s holding rested on (1) the existence of a

- 12 -

provision in the parties' services contract which *expressly delegated* the activity at issue – loading the truck – to the additional insured; and (2) the finding that negligence in such loading was the *sole* cause of injury. It states that neither factor is present here, because there is *no* division of operations in the CPL-PMI contract, and the district court based CPL's liability on PMI's control of the operations, *in addition to* CPL's faulty facility design. CPL asserts also that project owners' efforts to protect themselves from claims by independent contractors' employees will be thwarted if plaintiff's failure to name the workers-compensation-protected employer as a defendant can defeat coverage for an additional insured. And, it notes that Mid-Continent easily could have limited coverage by including in the endorsement terms such as "vicarious liability" or "negligence of the named insured".

To the extent that there is a conflict in the approach taken by **Granite** and **Admiral** in interpreting the endorsement, *e.g.*, fault-based versus activity-based, we agree with CPL that our affirming the coverage-for-CPL-ruling does *not* require us to resolve such conflict. We are persuaded that, in the light of **Granite**'s focus on the word "*operations*" in the endorsement, which it considered in conjunction with the parties' division of operations in its services contract, there is *no* need here to reach the same non-coverage holding.

First, the word "operations" does *not* appear in the Mid-Continent endorsement; rather, it uses "your work", which, per its policy definition as *work or* operations, may indicate that broader coverage was intended; second, the underlying services contract does *not* divide responsibilities between CPL and PMI *vis-a-vis* PMI's work; and finally, based on the finding in the **Fant** action that PMI controlled Fant's work at CPL, his injury, at least in part, "arose out of" PMI's work for CPL. Our holding is also consistent with **Admiral**. As was the named insured there, PMI was in the business of supplying workers, and its employee, Fant, was injured on CPL's premises while performing the work for which he had been hired.

Especially in the light of **McCarthy**, we are *not* convinced that the Texas Supreme Court would decide otherwise. And, because of our coverage holding, we need *not* address Mid-Continent's challenges to the district court's alternative rulings that CPL has coverage because of waiver or contractual liability. (Mid-Continent's motion to certify is **DENIED**.)

B.

In the alternative, Mid-Continent contests the amount of the attorney's fees and costs awarded CPL. This challenge focuses, in part, on the district court's interpretation of the settlement agreement.

- 14 -

As noted, pursuant to that agreement, the fees and costs issue was reserved for a bench trial. CPL requested $370,000 for this action and $130,000 for the appeal in the *Fant* action; Mid-Continent maintained that, at most, the evidence supported $40,000 and $15,000, respectively.

After the bench trial, which included expert witness testimony, the district judge held that, *pursuant to the settlement agreement*, he was to determine reasonable and necessary fees and costs pertaining to *all* of CPL's claims, *not* just for coverage. In finding the work by CPL's counsel to have been "reasonable and necessary", the court considered the well-known *Johnson* factors. And, having been persuaded by the testimony of CPL's expert witness, it found the "blended rate" charged by CPL's counsel to be "reasonable and comparable to the customary fees in both Beaumont and Houston, Texas".

In the light of the "complex" settlement reached by the parties and the uniqueness of the case, the court found the "'results obtained' factor [*not*] particularly relevant". CPL was awarded a total of $529,209.88 for the appeal in the *Fant* action and the completed work for this action, as well as $30,000 for the prospective work for this appeal.

The district court's legal conclusions are reviewed *de novo*; its fact findings, for clear error. *See*, *e.g.*, *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 537 (5th Cir. 1998). "Under the

clear error standard, we will reverse ... only if we have a 'definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1260 (5th Cir. 1971)). Such findings are *not* insulated by this deferential standard of review, however, if they are based on "an erroneous view" of the law. *Id.* (quoting *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 395 (5th Cir. 1996)).

We review *de novo* an unambiguous settlement agreement, *see Tarrant Distribs. Inc. v. Heublein Inc.*, 127 F.3d 375, 377 (5th Cir. 1997), as well as "[t]he determination of whether a settlement agreement is ambiguous." *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 753 (5th Cir. 1996). Along this line, the clear error standard is applicable "'when a district court uses extrinsic evidence to interpret an ambiguous'" agreement, *Tarrant*, 127 F.3d at 377 (quoting *In re Raymark Indus., Inc.*, 831 F.2d 550, 553 (5th Cir. 1987)). Of course, state law governs construction of the agreement. *See Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987).

For diversity cases, attorney's fees awards, which are "entrusted to the sound discretion of the trial court", *Texas Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990), are governed by state law. *Id.*

1.

- 16 -

The parties differ on interpretation of their settlement agreement.  The pertinent language is found in three provisions.  In ¶ 5.2, "MID-CONTINENT agrees that attorneys' fees and costs are recoverable by CPL subsequent to the appeal of [this action] and upon final judgment of the coverage decision if such decision is upheld by [the Fifth Circuit] in favor of CPL".  In ¶ 5.3, "[t]he parties agree that the total amount of fees and costs are [sic] to be determined" by the district court.  Finally, ¶ 5.5., "The Release", states: "CPL AND THE FANTS GENERALLY RELEASE AND FOREVER DISCHARGE MID-CONTINENT FROM ANY AND ALL EXTRA-CONTRACTUAL CLAIMS WHICH THEY HAVE BASED ON THE MATTERS ALLEGED IN THE LITIGATION SAVE AND EXCEPT THE COURT'S FINDING OF COVERAGE AND AMOUNT OF RECOVERABLE ATTORNEYS' FEES AND COSTS".

According to Mid-Continent, the only type fees agreed upon are those CPL could recover in connection with the coverage determination; and, therefore, the district court erred in relying solely on the settlement agreement as the basis for granting fees and costs for CPL's other claims as well.  It asserts that, because neither CPL's pleadings nor the pre-trial order give such effect to the settlement agreement, fees for the appeal in the **Fant** action are "recoverable" only as damages for breach of the insurance policy; fees for the coverage issue in this action, only under § 38.001(8) of the Texas Civil Practice and Remedies Code

("reasonable attorney's fees" may be recovered for breach of contract).

Mid-Continent asserts further that there is *no* basis under Texas law for CPL's recovery of fees incurred in pursuit of unsuccessful claims, and that it failed to segregate them. Therefore, under **Stine v. Marathon Oil Co.**, 976 F.2d 254, 264 (5th Cir. 1992) ("Texas law requires that attorney's fees arising from multiple claim litigation be allowed only for those claims for which they are authorized"), it maintains that, as a matter of law, CPL failed to prove what fees were reasonable and necessary regarding its *successful* claims. Mid-Continent acknowledges the trial testimony of CPL's lead counsel that all fees *after* entry of summary judgment on the coverage issue were incurred in connection with CPL's Article 21.21 claims, but it contends that the testimony did *not* aid the court in determining the amount of fees incurred for successful claims *prior* to that judgment.

CPL maintains that it did segregate the fees; that, for the approximate $338,000 in fees and $36,000 in costs awarded for this action, approximately $94,000 in fees and $13,000 in costs are attributable to its pursuit of the 21.21 claims. (CPL was also awarded approximately $127,000 in fees and $28,000 in costs for the appeal in the **Fant** action.) CPL asserts also that the settlement agreement *expressly* contemplated trial concerning *all* reasonable attorney's fees and costs, was properly before the court because it

*was* included in the pre-trial order, and was a "major concession", as a *quid pro quo* for CPL's dropping its 21.21 claims and the opportunity to recover treble damages, on what was otherwise a coverage dispute.

CPL points to **Lefarge Corp. v. Hartford Cas. Ins. Co.**, 61 F.3d 389 (5th Cir. 1995), in which this court, while acknowledging that intermediate Texas courts had assumed such fee awards *were* recoverable, decided to adhere to our precedent that contracts issued by insurers subject to Article 21.21 were exempt from payment of attorney's fees under § 38.001. *See* **Lefarge**, 61 F.3d at 402-03. CPL states that, as a result, it pursued the 21.21 claims as the only vehicle for recovering its fees in the coverage action.

Finally, CPL contends that, if the settlement agreement is ambiguous, the district court's construction is *not* clearly erroneous in the light of the entire record and the unrebutted testimony of CPL's counsel that all reasonable fees and costs are "recoverable".

For contract interpretation under Texas law, our focus, "'is to ascertain and to give effect to the intentions of the parties as expressed in the instrument'", the settlement agreement. **Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.**, 174 F.3d 653, 656 (5th Cir. 1999) (quoting **R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.**, 596 S.W.2d 517, 518 (Tex. 1980)). A contract, viewed in its entirety, "is ambiguous only if 'it is reasonably

susceptible to more than one meaning'", *id.* at 657 (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)); and "all of the surrounding circumstances" must be taken into account. *Fender v. Transamerican Natural Gas Corp.*, 12 F.3d 480, 485 (5th Cir. 1994).

Although the fees and costs order, which did *not* have an express finding of ambiguity, might indicate that the court made its determination based solely on the plain language of the settlement agreement, review of the record makes obvious that the court considered extrinsic evidence in deciphering the parties' intent. Therefore, we must apply the more deferential standard of review for findings of fact.

After examining the settlement agreement as a whole, we conclude that the court's interpretation was *not* clearly erroneous. Mid-Continent is correct that, under the "general rule", CPL has the burden of proving its fees are recoverable, *see* **Aetna Cas. & Sur. v. Wild**, 944 S.W.2d 37, 40 (Tex. App. 1997, writ denied) (citing **Stewart Title Guar. Co. v. Sterling**, 822 S.W.2d 1, 10 (Tex. 1991)); and that, likewise, fees for claims "*not permitted by statute or contract*" must be segregated. *Id.* at 40-41 (citing **International Sec. Life Ins. Co. v. Finck**, 496 S.W.2d 544, 546-47 (Tex. 1973) (emphasis added)). But, because the interpretation of the agreement was *not* clearly erroneous, *i.e.*, the *agreement permits* recovery of reasonable fees and costs related to *all* of

CPL's claims, we uphold the ruling that CPL had *no* duty to segregate the claims.

2.

The *amount* awarded is an entirely different matter. CPL conceded that it was entitled only to *reasonable* fees and costs. In making the reasonableness determination, the district court considered the 12 well-known factors outlined in ***Johnson v. Georgia Highway Express, Inc.***, 488 F.2d 714, 717-19 (5th Cir. 1974).[1]

Because Texas courts engage in a similar analysis, it has *not* been necessary for our court to decide whether the ***Johnson*** factors control in Texas diversity cases. *See* ***Atlantic Richfield Co. v. Manges***, 702 F.2d 85, 87 (5th Cir. 1983) (citing ***Tuthill v. Southwestern Pub. Servs. Co.***, 614 S.W.2d 205, 212-13 (Tex. App. 1981, writ ref'd n.r.e.) (citations omitted)); ***Robinson v. State Farm Fire & Cas. Co.***, 13 F.3d 160, 164 (5th Cir. 1994) (noting that Texas courts use factors similar to those used in federal courts in awarding attorney's fees). Nor need we do so now; the parties have

---

[1]Those factors are: (1) time and labor required; (2) novelty and difficulty of the issues; (3) required skill; (4) whether other employment is precluded; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the attorneys' experience, reputation and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. ***Migis v. Pearle Vision, Inc.***, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing ***Johnson***, 488 F.2d at 717-19).

used the **Johnson** analysis, and the Texas Supreme Court has recently outlined factors comparable to those in **Johnson**.[2]

While the clear error standard applies to fact findings on the **Johnson** factors separately, "the ultimate award of attorney's fees is reviewed for abuse of discretion", as are determinations regarding hours and rates. **Cobb v. Miller**, 818 F.2d 1227, 1231 (5th Cir. 1987) (citations omitted). In determining recoverable fees, not only must the district court examine "the product of the hours worked multiplied by the billing rate" (the "lodestar"), it must also consider, *inter alia*, "whether the award is excessive in light of the plaintiff's overall level of success". **Romaguera v. Gegenheimer**, 162 F.3d 893, 896 (5th Cir. 1998) (citing **Hensley v. Eckerhart**, 461 U.S. 424, 434 (1983)). Moreover, the requested fees must bear a "'reasonable relationship to the amount in controversy or to the complexity'" of the circumstances of the case. **Jerry**

---

[2]These factors are "'(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the expertise, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of the collection before the legal services have been rendered.'" **Arthur Anderson & Co. v. Perry Equip. Corp.**, 945 S.W.2d 812, 818 (Tex. 1997) (quoting TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. (STATE BAR RULES, art. X, § 9)).

***Parks Equip. Co. v. Southeast Equip. Co.***, 817 F.2d 340, 344 (5th Cir. 1987) (quoting ***Giles v. Cardenas***, 697 S.W.2d 422, 429 (Tex. App. 1985, writ ref'd n.r.e.)). In deciding whether fees are excessive, we "[are] entitled to look at the entire record and to view the matter in the light of the testimony, the amount in controversy, the nature of the case, and our common knowledge and experience as lawyers and judges". ***Id.***

As examples of claimed unreasonable time spent and fees billed, Mid-Continent cites, *inter alia*: (1) 32 hours spent on the argument summary for a pending summary judgment motion, billed at $5,500; (2) 75 hours on the order awarding CPL summary judgment, billed at $14,000; (3) $5,500 billed for subpoenas issued to Mid-Continent's lead counsel, seeking his files regarding a published decision in which he acted as counsel; and (4) over 30 hours of research for a memo on legal malpractice claims CPL did *not* initiate, at $2,500. Regarding the appeal in the ***Fant*** action, Mid-Continent contends that it should *not* be held accountable, for example, for over $30,000 billed to CPL for work done by its counsel *prior* to their assuming the appeal.

Mid-Continent asserts that CPL's counsel overstaffed their work, citing to bill summary entries indicating that 11 lawyers and at least six paralegals, over a period of slightly more than a year, worked on this action. In addition, it contends that CPL's billing *875 hours for the appeal of the **Fant** two-day bench trial* is

excessive, noting, for example, that three different attorneys and a paralegal spent a combined 140 hours reviewing the **Fant** trial transcript, at a cost of $19,000; and that there are $4,000 in "double charges", *i.e.*, where the same entry appears twice in the same day or on consecutive days.

Mid-Continent contends further that the district judge abused his discretion by failing to consider *all* of the **Johnson** factors, *especially* degree of success. It asserts that CPL was unsuccessful on more than half of its claims; and that, even though CPL had sought over $10 million in this action, the extent of the benefit it achieved was simply to avoid paying a $325,000 settlement to the Fants.

And, Mid-Continent claims that the district judge's reliance on the testimony of CPL's expert — that CPL's blended hourly rate of $137 per hour was reasonable — was error, because that method contradicts the lodestar analysis. It also contests the award of paralegal fees and costs, as consisting mainly of clerical, non-recoverable overhead, and the prospective fees awarded for this appeal ($30,000), because the district judge could *not* determine the reasonableness of the prospective work.

CPL responds that its fees and costs were necessitated by Mid-Continent's own conduct, citing, *inter alia*, its motion to disqualify CPL's lead counsel and his firm, and its efforts to limit discovery. In justification of the award, CPL states that it

had to alter its approach in the appeal in the *Fant* action to show that Fant's supervisor was also a "borrowed servant"; that the "factual intensity" of this defense required a detailed review of the record in the *Fant* action; and that, after summary judgment was granted on coverage, it began pursuing its Article 21.21 claims, because Mid-Continent was *not* amenable to a settlement on attorney's fees and costs.

CPL asserts that the research on the legal malpractice issue (concerning counsel provided by Mid-Continent to CPL in the *Fant* action) was legitimate; and that it did *not* seek reimbursement for fees prior to taking over the appeal in the *Fant* action. As for costs, CPL explained at trial that it sought costs due, *inter alia*, to the breach of the insurance contract.

CPL maintains that the district court properly considered the *Johnson* factors, and that it (CPL) had a high degree of success, not only in obtaining coverage, but also in reducing the judgment in the *Fant* action, valued at approximately $550,000 at time of settlement, to $325,000; that the district judge did *not* abuse his discretion in finding the blended rate reasonable; and, citing to case law in the Second and Fourth Circuits, that, because Mid-Continent originally filed suit in Houston, consideration of Houston rates was proper. *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (stating that if reasonable, court may consider rates in other communities); *Polk v.*

*New York State Dep't of Correctional Servs.*, 722 F.2d 23, 25 (2d Cir. 1983) (stating that court may look to prevailing rate in forum where action filed). Finally, CPL claims that it segregated clerical work from its paralegal fees, and that the prospective award of fees for this appeal was proper, because Texas courts have specifically approved such awards.

Both parties have characterized themselves as victims of litigational warfare: Mid-Continent accuses CPL of responding to its "simple request for declaratory relief as if nuclear war had been declared"; CPL counters that Mid-Continent is responsible for the "blitzkrieg" of litigation which drove up CPL's fees and costs. Needless to say, neither party is a novice to litigation. And, it also goes without saying that the cost in time and expense to the parties and the courts because of this fees and costs dispute is most regrettable and, for the most part, quite unnecessary. No authority need be cited for the fact that such disputes should *not* be a separate, or second, litigation.

Sadly, the "settlement agreement" failed miserably in this regard. Moreover, while it was proper for the district court to consider that agreement, it does *not*, *by itself*, "provide ... a meaningful way to determine if the actual amount of attorney fees was in fact reasonable and necessary". *Dunn v. Southern Farm Bureau Cas. Ins. Co.*, 991 S.W.2d 467, 475 (Tex. App. 1999, writ denied).

This fees dispute for this action does have some complexity, in part due to the multiple claims. But, based on our review of the record, including the billing summaries submitted by CPL, the award for this action of $338,314 in fees and $36,485.24 in costs is excessive for what was — *or at least should have been* — simply a coverage dispute. *See **Capital Bancshares,*** 907 F.2d at 1575. Along this same line, the award of $126,892.25 in fees and $27,821.39 in costs for the appeal in the **Fant** action is unreasonable. In sum, the amount of the award was an abuse of discretion.

In this regard, the district court did *not* abuse its discretion in accepting CPL's blended rate for attorney's fees, or in awarding fees for this appeal. *See **Clark Adver. Agency, Inc. v. Tice***, 490 F.2d 834, 840 (5th Cir. 1974) (citing **Yellow Freight Sys., Inc. v. Hydraulic Prods. Co.**, 482 S.W.2d 659 (Tex. App. 1972)). But, in deciding to use the **Johnson** factors, the court should have utilized them more precisely, especially, as noted, regarding the degree of success. And, at the least, it should have explained its reasons for rejecting Mid-Continent's other objections to CPL's request. *See **Atlantic Richfield***, 702 F.2d at 88.

As discussed, the district court did *not* clearly err in considering CPL's request for *all* claims. But, many of Mid-Continent's complaints appear legitimate, including, for example,

- 27 -

those about billing record entries regarding clerical work performed by paralegals. *See* **Allen v. United States Steel Corp.**, 665 F.2d 689, 697 (5th Cir. 1982) (noting that paralegal costs may be recovered "only to the extent that the paralegal performs work traditionally done by an attorney"); **Gill Sav. Ass'n v. International Supply Co.**, 759 S.W.2d 697, 703 (Tex. App. 1988, writ denied) (finding "*legal* work" properly performed by legal assistants recoverable) (emphasis added).

Mid-Continent requests that we render judgment on the award, citing **Cobb**, 818 F.2d at 1235. The **Cobb** court, having reversed the amount of the award, rendered judgment for the lodestar amount. **Id.** CPL does *not* respond specifically to this request; however, it does assert that the district judge, having presided over both the underlying **Fant** action *and* this one, was "uniquely positioned" to determine the award. The unusual posture of this issue – a bench trial in which, in addition to documentary evidence, the district judge considered the credibility of the parties' expert witnesses — persuades us that a remand is the wiser course.

Needless to say, on remand, "the court should exclude *all* time [in CPL's billing records] that is excessive, duplicative, or inadequately documented". **Watkins v. Fordice**, 7 F.3d 453, 457 (5th Cir. 1993) (emphasis added). And, among other things, the court can better determine the fee to award for this appeal for this action.

III.

For the foregoing reasons, those parts of the judgment as to coverage and as to CPL being entitled to attorney's fees and costs are **AFFIRMED**; those parts as to the amount of those fees and costs are **REVERSED**; and this matter is **REMANDED** for further proceedings consistent with this opinion.

***AFFIRMED IN PART; REVERSED AND REMANDED IN PART***