**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 18, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 02-10229

---

MANAGEMENT INSIGHTS, INC.,

Plaintiff-Counter Defendant-Appellant,

versus

BAXTER HEALTHCARE CORPORATION,

Defendant-Counter Claimant-Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas

(3:00-CV-2130-R)

---

Before KING, Chief Judge and HIGGINBOTHAM and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Management Insights, Inc. ("MII") appeals from the district court's judgment dismissing its

claim against Baxter Healthcare Corporation ("Baxter") for additional compensation that MII claims

Baxter owes for tax support services provided by MII to Baxter under a contract between the parties.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published
and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

MII further appeals from the district court's award of damages to Baxter for MII's breach of contract. For the following reasons, we affirm the dismissal of MII's claim against Baxter and reverse the district court's award of contractual damages to Baxter.

FACTUAL AND PROCEDURAL BACKGROUND

In January 1991, MII and Baxter entered into a contract, the State Tax Benefits Agreement (the "Agreement"), whereby MII would provide Baxter consulting and tax support services. As outlined in the Agreement, Baxter desired to "obtain certain services from MII with regard to qualifying for Tax Benefits." The Agreement further delineated the "Services to be Rendered by MII" as follows:

> 1. <u>Services to be Rendered by MII</u>  MII shall exercise its best efforts to assist [Baxter] in qualifying for Tax Benefits available under the Statutes. . . . Under this Agreement, MII will provide the following services as appropriate: (a) Research state tax benefit programs; (b) Assist in the identification and collection of necessary data; (c) Edit and match client location data to enterprise zones in MII's database; (d) Process necessary state applications for benefits; (e) Determine client eligibility for state programs; (f) Calculate tax benefits; (g) Provide a quarterly report on the status of MII activity; (h) Prepare an annual tax report and supporting documentation that can be used to file returns with the appropriate taxing authority; and (i) Communicate with state and local agencies.

In return, Baxter agreed to "fully cooperate with MII in identifying and implementing Tax Benefit programs available under the Statutes." Specifically, Baxter agreed to furnish certain information to MII within ninety-days, including the amount of state taxes paid by Baxter within the preceding two years, the amount of tax benefits previously claimed by Baxter within the last two years, copies of Baxter's unemployment compensation returns for the prior two years, information concerning new and existing locations of Baxter's business operations, and information concerning any future locations, additions, expansions, and remodeling.

2

Under the Agreement, Baxter was to pay MII a fee equal to twenty percent of the tax benefits "made available to" Baxter by MII "for each and every taxing authority." This fee was limited each year to "the amount of Tax Benefit actually used to offset a tax liability otherwise owed to a taxing authority." MII agreed to reimburse Baxter "for any fees paid by [Baxter] to MII with respect to any Tax Benefits which are ultimately disallowed by the taxing authority."[1]

The initial term of the Agreement was fifteen months. The Agreement further provided for automatic renewal for one-month periods unless canceled by either party upon thirty days written notice. Upon termination, MII is entitled to "its fees with respect to all Benefits which have been made available by MII to [Baxter] even though such Tax Benefits are not available to [Baxter] until after the termination of this Agreement as long as such Tax Benefits are attributable to periods ending on or before the date" of cancellation. Finally, the Agreement contains a merger clause and the following provision concerning MII's liability:

> (h) IN THE EVENT THAT ANY TAX BENEFITS ARE NOT OBTAINED OR ULTIMATELY DISALLOWED AS A RESULT OF ANY NEGLIGENT ACT OR OMISSION BY MII, THEN MII SHALL REIMBURSE CLIENT FOR ANY FEES PAID TO MII WITH RESPECT TO SUCH DISALLOWED TAX BENEFITS. MII SHALL NOT BE LIABLE, OTHER THAN AS SET FORTH HEREIN, FOR ANY DISALLOWANCE OF TAX BENEFITS OR FOR THE RENDITION OF ITS SERVICES UNDER THIS AGREEMENT.

On August 25, 2000, MII brought suit against Baxter in Texas state court, alleging breach of the Agreement. MII asserted that Baxter owed it additional compensation because MII "made available" to Baxter certain state tax credits, Baxter obtained the benefits from these credits, but Baxter did not pay MII the required twenty-percent fee. On October 13, 2000, Baxter sent MII

---

[1] Exhibit A to the Agreement contained a list of tax benefits that Baxter was currently claiming as of the date of the Agreement. Under the Agreement, MII could not claim compensation for assisting Baxter in procuring these tax credits.

written notice of its intent to terminate the Agreement. The case was removed to federal court based on diversity jurisdiction. Baxter filed a counterclaim alleging that MII breached the Agreement by failing to provide "documentation support services" during an audit of Baxter's 1994 and 1995 California state tax returns. After a bench trial, the district court dismissed MII's claims with prejudice and awarded $148,632 to Baxter on its counterclaim. MII appeals.

## DISCUSSION

We review the district court's findings of fact for clear error and its conclusion of law <u>de novo</u>. <u>Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.</u>, 117 F.3d 180, 186 (5th Cir. 1997). Under the clear error standard, we will reverse the district court's findings of fact "only if we have a definite and firm conviction that a mistake has been committed." <u>Mid-Continent Cas. Co. v. Chevron Pipe Line Co.</u>, 205 F.3d 222, 229 (5th Cir. 2000). "[W]hether a contract is ambiguous, as well as the interpretation of an unambiguous contract, are questions of law review <u>de novo</u>." <u>Triad Elec. & Controls, Inc.</u>, 117 F.3d at 187.

In this case, we look to the law of Texas to provide the rules of contract interpretation. <u>See</u> <u>id.</u> at 191. Under Texas law, a contract is ambiguous if, "after applying established rules of interpretation, the written instrument remains reasonably susceptible to more than one meaning." <u>Id.</u> In determining whether the contract is ambiguous, we "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." <u>Id.</u>

## I. Compensation Due Under the Agreement

The district court held that MII was not entitled to any additional compensation because it had not performed the necessary services required under the Agreement. MII argues that the

4

Agreement does not require it to perform <u>all</u> of the services delineated in section 1(a)-(i). MII contends that its compensation is not dependent on it providing services each and every year, rather that "[t]he only reasonable interpretation is that MII contracted for a right somewhat akin to a royalty." Under this view, once MII <u>identified</u> a credit to Baxter, that credit was "made available" to Baxter, thus MII would be entitled to twenty-percent of Baxter's tax savings each year Baxter used the credit. Baxter asserts that the plain language of the Agreement illustrates that it was as an agreement for services, specifically that MII agreed to provide support services in order to assist Baxter in qualifying for tax benefits.

We find that the only reasonable interpretation of the Agreement is that is was an agreement for services. As such, MII is not entitled to compensation for years in which it provided no services. Under the Agreement, MII was entitled to twenty-percent "of the Tax Benefits <u>made available</u> to [Baxter]." (emphasis added). Under the Agreement, MII was obligated to do more than just initially identify a tax credit in order to reap this benefit every year the tax credit was utilized. MII was entitled to compensation for those years in which Baxter reaped a benefit from MII's consulting and tax support services by way of a tax savings <u>and</u> MII assisted Baxter in reaping this benefit. Although the Agreement does not require that MII perform each and every one of the delineated services each year, we are unpersuaded by MII's contention that the language "MII will provide the following services as appropriate" indicates that MII need not perform <u>any</u> services in order to reap twenty-percent of the benefit Baxter received in tax savings for a given year.[2] After considering the entire

---

[2] MII further asserts that it is owed additional compensation resulting from the use of the Louisiana Inventory Franchise Tax Credit ("LITC") by Allegiance, a spin-off company of Baxter. MII performed services pertaining to the LITC and made the LITC available to Baxter. As such, MII argues that it should be paid for Allegiance's use of the LITC during 1996. The district court determined that "MII failed to present evidence that Allegiance took the [LITC] for tax year 1996."

writing, see Triad Elec. & Controls, Inc., 117 F.3d at 191, we are persuaded that the Agreement is unambiguously an Agreement for services and that MII's construction is unreasonable. For these reasons, we affirm the district court's decision that MII is owed no additional compensation under the Agreement.[3]

II.    Counterclaim

Baxter claimed the California Manufacturer's Investment Tax Credit ("MIC") for tax year 1995 based, in part, on work performed by MII. MII retained the supporting documentation it compiled for this credit. In December 1999, Baxter's claim was audited by the California taxing authorities. As a result of the audit, MII provided Baxter with copies of the invoices it had compiled in support of the California MIC. As part of the audit, Baxter received an information and document request ("IDR") concerning the California MIC. Baxter asserts that it requested that MII "provide the appropriate services to help defend the audit." Specifically, on December 27, 1999, Baxter forwarded MII a copy of the IDR along with a letter which indicated that Baxter was not "pursuing the necessary documentation for any items subject to the MIC" valued under $10,000. The letter indicated, however, that "MII may on its own, wish to use its resources, to further pursue the requested necessary documentation for the items listed which are less than this amount." The letter further stated the following:

---

After reviewing the record, we agree.

[3] We further reject MII's argument that it is entitled to attorney's fees under the Agreement whether or not it prevails in this action. Under the Agreement, MII is entitled to attorney's fees "[i]n the event it becomes necessary for MII to enforce its rights under this contract." Because we have rejected MII's claims that it is owed additional compensation, MII has not enforced any "rights" under the Agreement.

If you have any additional information or support that MII has gathered and wishes to provide to the CA Auditor regarding any of the IDR listed items, please provide us with that documentation just as soon as possible. If we are unsuccessful in gathering the additional support, information and documentation that has been requested by the CA auditor for the MII listed 1994 and 1995 Hyland assets, no CA MIC will be applicable to these purchases.

Baxter claims that MII breached the Agreement by failing to provide documentation support services to assist Baxter in defending the audit. Unlike the district court's extensive findings concerning MII's claim for additional compensation under the Agreement, with regard to the counterclaim the district court simply found that MII's failure to provide the services requested by Baxter constituted a breach of the Agreement and awarded Baxter $148,632 in damages, i.e. the cost incurred by Baxter to retain outside audit support services. MII argues that it was not obligated to provide post-filing audit support services. We agree. Upon a careful review of the record, we find no evidence to support the district court's finding. The resolution of this issue turns on the plain language of the Agreement.

Under the Agreement, MII was to perform the following services as appropriate: "Assist in the identification and collection of necessary data; . . . Prepare an annual tax report and supporting documentation that can be used to file returns with the appropriate taxing authority." MII was not obligated to provide services beyond what it did - it produced the documentation it had compiled in support of filing the claimed credit. If the parties had intended for MII to bear the burden of defending against an audit, which most certainly these parties contemplated might occur, the Agreement would have clearly stated this duty.[4] The Agreement does not clearly state such an

---

[4] This point is belied by the Agreement's provision limiting MII's liability for negligent acts or omissions to reimbursement of any fees paid to MII with respect to any disallowed tax benefits. As the Agreement clearly states, "MII SHALL NOT BE LIABLE, OTHER THAN AS SET FORTH HEREIN, FOR ANY DISALLOWANCE OF TAX BENEFITS OR FOR THE RENDITION OF ITS

obligation, nor allude to one. Accordingly, we reverse the district court's award of contractual damages to Baxter.

## CONCLUSION

For the reasons stated above, we AFFIRM the district court's dismissal of MII's claim against Baxter and REVERSE the award of contractual damages to Baxter.

---

SERVICES UNDER THIS AGREEMENT."