# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 30, 2013

Lyle W. Cayce
Clerk

No. 12-10102

MAVERICK INDUSTRIES, INCORPORATED, doing business as National Communication Services,

Plaintiff-Appellant

v.

AMERICAN TELECONFERENCING SERVICES, LIMITED, doing business as Premiere Global Services, Incorporated,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CV-0389-N

Before JONES, BARKSDALE, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Maverick Industries, Inc. brought suit against American Teleconferencing Services, Ltd. for breach of contract. After a bench trial, the district court ruled for Maverick, but it awarded less than 25% of the attorneys' fees Maverick was seeking. Maverick appeals, and we AFFIRM.

Maverick described itself in its complaint as a company that "brokers telecommunications services for corporate clients." In September 2000, it

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

entered into a commission agreement with American Teleconferencing.[1]  The contract provided that whenever Maverick referred a customer to American Teleconferencing, Maverick would receive a commission in the amount of 15% of that customer's teleconferencing bill for the initial and all later services.  The service Maverick provided under the contract apparently was only the initial referral of a customer in need of teleconferencing services.  Thereafter, Maverick received ongoing commissions but provided no ongoing services.

In December 2008, American Teleconferencing breached the contract by stopping commission payments on two accounts, those of Dean Foods and Bay Valley Foods, asserting that those companies were not Maverick "customers" as required by the contract.  Maverick filed suit in March 2009.  In August 2009, American Teleconferencing offered to settle by paying all past due commissions on these two accounts, without interest, to recognize the validity of the contract in the future, and to pay $10,000 in attorneys' fees.  At the time, Maverick was also investigating the validity of bringing tort claims.  It had spent approximately $25,000 on attorneys' fees.  Maverick neither accepted the offer nor made a counteroffer.  In September 2009, American Teleconferencing began to wire the disputed commissions into a Maverick bank account.  By the date of trial, American Teleconferencing had paid all disputed commissions, but it had also filed a counterclaim in Maverick's lawsuit to recover them.

After a bench trial, the district court awarded Maverick $1,481 in interest for delayed commission payments and $24,285 in anticipated future payments.  The court rejected American Teleconferencing's counterclaims for recovery of $269,754 in commissions it had paid, in effect confirming that those funds belonged to Maverick.  The district court awarded no damages for commissions beyond the end of 2011, finding those damages too speculative.  Maverick sought

---

[1] The parties use acronyms derived from the business names to refer to each other.  For clarity, we will use the corporate names.

No. 12-10102

attorneys' fees of $548,171; the district court awarded $125,000. Maverick's appeal concerns only the slimmed-down award of attorneys' fees.

## DISCUSSION

The underlying contract issues in this case were decided by applying Texas law. Therefore, the fee award and reasonableness of that award is governed by Texas law. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 433 (5th Cir. 2003). A "district court has broad discretion in determining the appropriateness of an award of attorneys' fees, and we review its award or denial thereof for an abuse of that discretion." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). "The district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). At least in the context of awards under civil rights statutes, we have said that consideration of "attorney's fees should not result in a second major litigation" and recognized the superior position of the trial court to appreciate the complexity and scope of a given case. *Hopwood v. Texas*, 236 F.3d 257, 277 (5th Cir. 2000).

Under Texas law, when a party is successful in a breach of contract action, some attorneys' fees must be awarded, though the "trial court has discretion to fix the amount of attorney's fees." *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 683 (Tex. App.–Fort Worth 1998, pet. denied) (citing Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)).

This circuit has set out numerous factors that a district court should consider when awarding attorneys' fees. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[2] A district court should explain how

---

[2] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

3

the factors were used to set a fee award; the amount of the award should "reflect[] the considerations which led to it." *Id.* at 720. We do not require "a meaningless exercise in parroting and answering each of *Johnson*'s twelve criteria, but some assurance that the court has arrived at a just compensation based upon appropriate standards." *Davis v. Fletcher*, 598 F.2d 469, 470-71 (5th Cir. 1979). It will not always be necessary for a court to articulate reasoning under each factor, as at times not all will be relevant. *Id.* at 471.

Texas courts have similar considerations.[3] Texas law also requires some explanation of fee awards. One court found an abuse of discretion when a fee award was made "arbitrarily [with] no logical basis for these awards reflected in the record." *Bates v. Randall Cnty.*, 297 S.W.3d 828, 838 (Tex. App.–Amarillo 2009, pet. denied). Conversely, an award should be approved if the appellate court "cannot say the trial court arbitrarily applied the wrong standard or followed no guiding principle." *City of Austin v. Janowski*, 825 S.W.2d 786, 791 (Tex. App.–Austin 1992, no writ.)

The issue remains open whether the twelve factors enumerated in *Johnson* apply in Texas diversity cases. *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000). We need not give an answer today, as the district court's fee award satisfies both the *Johnson* and the Texas standards. The district court explained its award this way:

---

*Johnson*, 488 F.2d at 717-19.

[3] The Texas factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood [, if apparent to the client,] that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

4

[Maverick] has incurred attorneys' fees and expenses in prosecution of this action through trial in excess of $548,171.73. . . . In addressing that question [of overall reasonableness of fees] the Court must consider the amount [Maverick] will recover as damages on that claim, as well as the fact that [American Teleconferencing's] August 11, 2009 settlement offer (Ex. 176) offered [Maverick] almost complete recovery. The Court is mindful that [American Teleconferencing] made that offer (and paid commissions in the interim) only because [Maverick] was pursuing this litigation. Taking all of those factors into consideration, including the factors in Rule 1.04(b) of the Texas Disciplinary Rules of Professional Conduct and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974), the Court finds that a reasonable and necessary attorneys' fee in connection with [Maverick's] breach of contract claim is $125,000.

We start with the obvious, that the district court recognized Maverick's attorney expenses of $548,171.73. This figure was the product of *Johnson*'s first guideline of time and labor required, and it is one component of the first guideline of Texas Disciplinary Rule of Professional Conduct 1.04. The district court found "it was reasonable to incur that magnitude of attorneys' fees in the context of the overall case."

Second, the district court referred to the amount in controversy and the results obtained, considered by both *Johnson*'s eighth factor and the fourth factor of Texas Rule 1.04. The district court found that the deposits for past due commissions were "made unilaterally" by American Teleconferencing, and Maverick did not accept the payments as satisfying the claims and extinguishing its rights against American Teleconferencing.

The district court held Maverick was entitled only to the commissions it sought through the 2011 contract year. That temporal limitation meant that Maverick received only $24,285 out of the $210,852 in future commissions it requested. The difference arose from the finding, unchallenged on appeal, that the commissions Maverick sought from 2012 through 2016 were too speculative. Relatedly, the parties and the district court have treated the underlying contract

as terminated. American Teleconferencing had offered in settlement to pay most of the accrued commissions and to continue the contract. Thus continuing the lawsuit and incurring the additional attorneys' fees could be seen as counterproductive, at least in part.

In conclusion, the district court held that considering "the factors in Rule 1.04(b) of the Texas Disciplinary Rules of Professional Conduct and *Johnson,*" a reasonable attorneys' fee would be $125,000.

Our review accepts the district court's statement that it considered both the *Johnson* and Texas factors. The court then adjusted the lodestar amount after explaining the two factors it considered most relevant, that of the amount involved in the lawsuit and the results obtained. The explanation could have been more expansive, but it permits us to make a fair evaluation of the reasons for the district court's decision. The district court "sufficiently considered the appropriate criteria." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010). The explanation reveals a reasoned, if abbreviated, application of the correct legal standard. *See Bates*, 297 S.W.3d at 838. There was no abuse of discretion.

AFFIRMED.